IN RE the PATERNITY OF BRAD MICHAEL L.:

BRAD MICHAEL L., Petitioner-Appellant,

v.

LEE D. and Catherine R.L., Respondents-Respondents.

Court of Appeals

*No. 94–3050. Submitted on briefs February 4, 1997.—Decided April 29, 1997.*

(Also reported in 564 N.W.2d 354.)

438

For the petitioner-appellant the cause was submitted on the briefs of *Legal Aid Society of Milwaukee, Inc.*, with *Kathleen A. Thiemann* and *Brad Michael L.*, of Milwaukee.

For the respondents-respondents, Lee D., the cause was submitted on the briefs of *Schellinger & Associates*, with *Neal C. Schellinger* of Brookfield.

Amicus Curiae brief was filed by *State of Wisconsin*, with *Sheila M. Parrish-Spence* of Milwaukee.

Before Fine, Schudson and Curley, JJ.

SCHUDSON, J. Brad Michael L., by his guardian ad litem, the Legal Aid Society of Milwaukee, appeals from the trial court's "Findings of Fact, Conclu-

sions of Law & Order" in a paternity action. Brad challenges the trial court's determination of child support that his father, Lee D., is obligated to pay.

Brad argues that the trial court erred in concluding: (1) that Lee had no obligation to pay past child support for the first fifteen years of Brad's life because Lee was unaware of Brad's existence; (2) that if, by its terms, § 767.51(4), STATS. (1991-92),[1] allows for payment of past child support for the period during which Lee was unaware of Brad's existence, the statute would be "retroactive and unreasonable" and "may be unenforceable because violative of the *ex post facto* clause of the U.S. Constitution;" (3) that ignorance of one's paternity is among the factors properly considered when determining child support; (4) that marital property law principles apply to the determination of base income when setting child support; (5) that depreciation value should not be included in the determination of Lee's income; and (6) that child support for Brad could be modified after he would reach adulthood should college costs require additional support. Brad is correct in all respects and, accordingly, while affirming the order of paternity, we also reverse and remand for the proper determination of child support.

## I. FACTUAL BACKGROUND

Brad was born to Catherine L., on November 7, 1977. Catherine was unmarried at the time and Brad's paternity was never established. In 1992, however, Catherine, concerned about Brad's potential college costs, wrote to Lee informing him that he was Brad's

---

[1] All further Wisconsin statutory references are to the 1991-92 Statutes unless otherwise noted.

father and asking that his "name be placed on the birth certificate as his father." She wrote:

> I love Brad very much and want the best for him. I plan on him attending college. I do work but don't make enough to afford college. I'm not asking you for any money, please know that. I tried to enroll him on my tribal roll (Menominee) so that he would be eligible for grants for college. Unfortunately he doesn't have enough Menominee blood to qualify. I want to try to enroll him on your (Stockbridge) tribal roll.

After receiving no response from Lee, Catherine contacted Milwaukee County's Child Support Enforcement office. Catherine learned that the statute of limitations barred her and the State from bringing a paternity action, but Brad, under § 893.88, STATS., could do so.[2] The Legal Aid Society of Milwaukee as guardian ad litem, then filed Brad's paternity action.[3]

---

[2] Section 893.88, STATS., provides in part that "an action for the establishment of the paternity of a child shall be commenced within 19 years of the date of the birth of the child or be barred." Although the statute was enacted a few years after Brad's birth, it is applicable "even if [a child] was born before 1981 and the five-year statute has run on the state's right to bring the action." *A.M.L. v. J.E.L.*, 161 Wis. 2d 133, 135, 467 N.W.2d 570, 571 (Ct. App. 1991).

[3] Since the time the Legal Aid Society entered this case, Brad has reached adulthood. Thus, the Legal Aid Society now represents Brad as counsel, not as guardian ad litem. In his brief to this court, Brad explains that the unusually protracted litigation of this case results, in large part, from two periods of delay—the first involving one year of litigation regarding guardian ad litem fees; the second involving one and one-half years of problems in securing a transcript from a court reporter who had left Wisconsin taking her notes with her.

After blood tests established a 99.96% probability of Lee's paternity, he admitted his paternity but testified that he had had no knowledge of Brad's existence. Ultimately, the parties stipulated that Lee had not known of Brad for the first fifteen years of his life. In the fifteen years since Brad's birth, Lee had married and fathered two children. With his wife, he had successfully maintained a farm and logging business.

The trial court ordered Lee to pay $500 monthly for future support. The trial court order further provided that "[t]he child support order may be later modified . . . to pay for Brad's subsequent education if Brad's academic performance and attitude warrant."[4] The trial court, however, denied past support concluding that application of § 767.51(4), STATS., would violate the *Ex Post Facto* Clause of the United States Constitution[5] and, further, would be unfair to Lee because he had not known of Brad and had had no opportunity to develop a relationship with him.

## II. STANDARD OF REVIEW

We recently summarized the standard of review applicable to several of the issues on appeal:

---

[4] Brad was almost seventeen years old when the trial court issued its order. Although more than one year remained before his adulthood, the parties agree that the trial court was contemplating payment for college after Brad turned eighteen.

[5] We note several variances between the trial court's order and its written memorandum decision. In this instance, for example, the order, as quoted earlier, states that retrospective application of § 767.51(4), STATS., "may" constitute an *ex post facto* violation of Lee's rights. The written decision, however, states that such statutory application "would be retroactive and violative of the ex post facto clause."

A determination of child support is committed to the sound discretion of the trial court. Discretion contemplates a reasoned application of the law to the facts of the case. We will reverse a discretionary determination that misapplies the law.

Whether the trial court misapplied the law by concluding that [certain forms of income] are not included in gross income and thereby not subject to child support requires us to interpret the definition of gross income under Wis. Adm. Code ch. HSS 80. The rules governing the construction of administrative rules are the same as those applicable to statutory construction. The application of a statute or administrative rule to undisputed facts presents a question of law. We review questions of law independently without deference to the trial court.

*Stephen L.N. v. Kara L.H.*, 178 Wis. 2d 466, 471-72, 504 N.W.2d 422, 424-25 (Ct. App. 1993) (citations omitted). Additional standards of review will be noted in the appropriate sections of our discussion.

## III. PAST CHILD SUPPORT—AUTHORITY

Brad first argues that "the trial court's paternity judgment should have required [Lee] to pay past child support" under § 767.51(4), STATS. He contends that the trial court erred in concluding that application of the statute would be inequitable and violative of Lee's constitutional protection against *ex post facto* laws.

Statutes are presumed to be constitutional. *State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703, 708 (1982). One challenging the constitutionality of a statute bears the burden of proving unconstitutionality beyond a reasonable doubt. *Id.* Whether a statute is constitutional presents a question of law we review *de novo. Id.* at 41 n.7, 315 N.W.2d at 708 n.7.

Section 767.51(4), STATS., in part provides: "The father's liability for past support of the child shall be limited to support for the period after the birth of the child." The statute in no way suggests that the limitation is further qualified by a condition that the father know of the child's birth.[6] Thus, if § 767.51(4) applies to support for children born before its enactment, Lee would be responsible for Brad's support for all years following his birth, whether or not Lee knew of his birth.

"[L]egislation is presumed to apply prospectively unless the statutory language reveals, by express language or necessary implication, an intent that it apply retroactively." *Schulz v. Ystad*, 155 Wis. 2d 574, 597, 456 N.W.2d 312, 320 (1990). The express statutory language of 1987 Wis. Act 27, § 3203(10)(bm), provides that § 767.51(4), STATS., applies "to paternity actions commenced" on or after October 1, 1987. Brad's paternity action commenced on October 27, 1992 and, therefore, is governed by § 767.51(4).

We disagree with the trial court's conclusion that retroactive application of § 767.51(4), STATS., violates Lee's protection against *ex post facto* laws. Article I, Section 9 of the Constitution of the United States provides that "[n]o . . . ex post facto Law shall be passed." As the supreme court recently reiterated, however, "It is well established that the constitutional prohibition

---

[6] Prior to 1987, a father's liability for past support of the child in a paternity case was statutorily limited to support for the period after the commencement of the paternity action. *See* § 767.51(4), STATS. (1985-86). In 1987, § 767.51(4) was amended to extend the father's liability for past support for "the period *after the birth of the child."* *See* 1987 Wis. Act. 27, § 2137y (emphasis added).

on ex post facto laws applies only to penal statutes." *State v. Carpenter*, 197 Wis. 2d 252, 272, 541 N.W.2d 105, 113 (1995) (declaring that sexually violent person civil commitment statute is not violative of the *Ex Post Facto* Clause). Rejecting a father's *ex post facto* challenge to the retroactive application of a paternity statute to a child born before the statute's enactment, the Massachusetts Court of Appeals explained:

> The constitutional prohibitions against ex post facto laws . . . only apply to statutes which are penal in nature. Actions brought pursuant to [the paternity statute] are . . . civil in nature. The statute was not enacted to punish the parent of a child born out of wedlock but, instead, to enforce his duty, established long ago, to provide support for the benefit of his or her children born out of wedlock.

*Department of Revenue v. Roe*, 577 N.E.2d 323, 325 (Mass. App. Ct. 1991) (citations omitted).

Moreover, the general rule requiring prospective application of substantive legislation is to ensure that informed people can conduct themselves according to legal expectations and requirements. *See Schulz*, 155 Wis. 2d at 597, 456 N.W.2d at 320 (discussing the presumption against retroactive legislation). Lee, aside from asserting his lack of knowledge of Brad, cannot claim that he could not conduct himself according to law. Even before the enactment of § 767.51(4), STATS., Wisconsin law required support payment from the time of a child's birth, without any condition connected to a father's knowledge of the birth. Section 52.37(1), STATS. (1977), in part provided that upon a determination of paternity, "the father . . . shall be ordered to pay . . . for

the past care and support of the child, from the time of its birth until the date of . . . the entry of judgment."[7]

Thus, the trial court decision was simply incorrect in stating that "[i]t goes against the basic concepts of justice to impose liability on an individual where, from the time the action accrued to the time the action was filed, the individual was *not liable*." (Emphasis added.) Lee always *was liable*; he just did not know of his liability.

■

Accordingly, we conclude that retroactive application of § 767.51(4), STATS., does not violate Lee's protection against *ex post facto* laws or the rule favoring prospective application of substantive legislation and, further, that by its explicit terms, § 767.51(4) does apply to Lee's "liability for past support of [Brad] . . . for the period after [Brad's] birth" despite Lee's lack of knowledge of Brad's existence.[8]

---

[7] The trial court actually made two mistakes in this regard. First, it incorrectly concluded that the applicable law would be that in effect at the time of Brad's birth, rather than the law in effect at the time the action was commenced. Second, in attempting to apply the law in effect at the time of Brad's birth, the trial court incorrectly applied an earlier version of § 767.51 (4), STATS., that indeed did limit past support to the period after commencement of the action. That version, however, did not become effective until July 1, 1981. Under the trial court's own mistaken theory, to apply the law effective at the time of Brad's birth, it should have used § 52.37(1), STATS. (1977).

[8] Although Lee has offered numerous arguments in support of the trial court's decision on this issue, virtually all are based on case law dealing with significantly distinguishable circumstances, including orders of past child support under "denial agreements," *see Gerhardt v. Moore*, 150 Wis. 2d 563, 441 N.W.2d 734 (1989); *see also P.J.W. v. D.A.H.*, 150 Wis. 2d 123, 441 N.W.2d 289 (Ct. App. 1989); and under divorce orders, *see*

449

## IV. PAST CHILD SUPPORT—FACTOR

Brad next argues that the trial court erred in deviating from the § 767.51(5), STATS., percentage standards by considering an impermissible factor—that Lee, because of lack of knowledge of Brad, "was not," in the trial court's words, "given the opportunity to provide for the child nor to visit with the child." Brad is correct.

Section 767.51(5), STATS., specifies the factors a trial court must consider when deviating from the child support percentage standard. The factors are:

> (a) The needs of the child.
> (am) The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (3m).
> (b) The standard of living and circumstances of the parents, including whether a parent receives maintenance payments under s. 767.26 and the needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 USC 9902 (2).
> (c) The relative financial means of the parents.

*Griffin v. Reeve*, 141 Wis. 2d 699, 416 N.W.2d 612 (1987); *see also Resong v. Vier*, 157 Wis. 2d 382, 459 N.W.2d 591 (Ct. App. 1990).

Similarly misguided is Lee's invocation of § 767.25(1m)(i), STATS., dealing with child support in *divorce* actions, rather than § 767.51(5)(j), STATS., dealing with child support in *paternity* actions. As Brad points out, although both statutes allow for unspecified, "catchall" criteria, the former allows for a trial court to consider "[a]ny other factors which the court in each case determines are relevant," while the latter, applicable to paternity, allows the trial court to consider "[a]ny other factors which the court in each case determines are relevant to the best interests of the child."

(d) The earning capacity of each parent, based on each parent's education, training and work experience and based on the availability of work in or near the parent's community.

(e) The need and capacity of the child for education, including higher education.

(f) The age of the child.

(g) The financial resources and the earning ability of the child.

(gm) Any physical custody arrangement ordered or decided upon.

(gp) Extraordinary travel expenses incurred in exercising the right to periods of physical placement.

(h) The responsibility of the parents for the support of others.

(i) The value of services contributed by the custodial parent.

(im) The best interests of the child.

(j) Any other factors which the court in each case determines are relevant to the best interests of the child.

Although a trial court has discretion to deviate from the percentage standard when setting past support, it does not have discretion to ignore the statutorily specified factors on which it may base such a deviation, or to substitute others. *See Stephen L.N.,* 178 Wis. 2d at 479, 504 N.W.2d at 427. Whether a trial court has ignored required factors or substituted an improper factor presents a question of law we review *de novo. Id.* at 477, 504 N.W.2d at 427.

Neither the trial court's decision nor Lee's argument on appeal identifies any statutorily specified factor that conceivably could encompass the trial court's stated basis for the deviation it ordered. If Lee's

lack of knowledge and resulting inability to visit and provide for Brad could form a basis for deviation, the reach of § 767.51(4), STATS., to the entire "period after the birth of the child" could be limited in a manner that would be inconsistent with § 767.51(4). Indeed, the circumstances of this case are similar to those in *Stephen L.N.*, where we concluded that the trial court misapplied the law by deviating from the percentage standard on the basis of the father's "lack of contact with the child and his willingness to initiate the paternity proceedings." *Id.* at 479, 504 N.W.2d at 427. Thus, we concluded, because "[n]either of these factors is enumerated in sec. 767.51(5), STATS.," they were not "appropriate to justify a modification." *Id.* at 479, 504 N.W.2d at 427-28.

We understand the trial court's equitable concerns, given Lee's lack of knowledge of Brad. Indeed, his lack of knowledge for fifteen years may very well have resulted in various life-style decisions that, in turn, affected Lee's "standard of living and circumstances," § 767.51(5)(b), STATS., "relative financial means," § 767.51(5)(c), "earning capacity," § 767.51(5)(d), and "responsibility . . . for the support of others," § 767.51(5)(h). To acknowledge that such factors must be considered, however, is not to say that Lee's lack of knowledge and resulting inability to visit and provide for Brad, standing alone, may justify a deviation from the percentage standards. As Brad correctly argues:

> There is nothing in [§ ] 767.51(5), STATS.[,] limiting a father's past support liability to the period beginning on the day he learned that he was the child's father. The child cannot be held responsible nor

should the child be punished simply because the father was not aware of his child's birth nor because the paternity action was not begun earlier.

Thus we conclude that the trial court improperly based its deviation from the percentage standard and refusal to order past support on an impermissible factor, inconsistent with the mandate of § 767.51(5), STATS.

## V. FUTURE CHILD SUPPORT

Brad next argues that the trial court erred by awarding future child support of $500 per month based on approximately one-half of Lee's adjusted gross income. Specifically, he contends that the trial court, in calculating Lee's adjusted gross income, should not have used marital property law principles in determining Lee's basis; should not have deducted depreciation from Lee's gross income; and should not have excluded imputed income from Lee's farm.

In determining the proper monthly child support payment, a trial court calculates the payer's base under WIS. ADM. CODE § HSS 80.03(1) (August 1987)[9] by

---

[9] The Department recently revised Chapter HSS 80 of the Wisconsin Administrative Code. These new provisions and definitions took effect on March 1, 1995, and provide in relevant part:

HSS 80.03 **Support orders. (1)** DETERMINING CHILD SUPPORT USING THE PERCENTAGE STANDARD. The payer's base shall be determined by adding together the payer's gross income available for child support under sub. (2), if appropriate, and the payer's imputed income for child support and dividing by 12.

. . . .

(2) GROSS INCOME AVAILABLE FOR CHILD SUPPORT. In determining the payer's base under sub. (1), the court may adjust the gross income by adding wages paid to dependent household members and by reducing gross income by the business expenses which the court determines are reasonably necessary for the production of

adding the payer's gross income adjusted for child support and the payer's imputed income, and dividing by twelve.

that income or operation of the business and which may differ from the determination of allowable business expenses for tax purposes.

. . . .

**HSS 80.02 Definitions.**

. . . .

**(13)** "Gross income" means:

(a) All income considered federal gross income under 26 CFR 1.61-1;

(b) Net proceeds resulting from worker's compensation or other personal injury awards intended to replace income;

(c) Unemployment compensation;

(d) Income continuation benefits;

(e) Voluntary deferred compensation, employe contributions to any employe benefit plan or profit-sharing, and voluntary employe contributions to any pension or retirement account whether or not the account provides for tax deferral or avoidance;

(f) Military allowances and veterans benefits;

(g) Undistributed income of a corporation, including a closely-held corporation, or any partnership, including a limited or limited liability partnership, in which the payer has an ownership interest sufficient to individually exercise control or to access the earnings of the business, unless the income included is an asset under sub. (3);

(h) Any income imputed to the payer under s. HSS 80.05; and

(i) All other income, whether taxable or not, except that gross income does not include public assistance or child support received from previous marriages or from paternity adjudications.

**(14)** "Gross income available for child support" means the amount of gross income after adding wages paid to dependent household members and subtracting business expenses which the court determines are reasonably necessary for the production of that income or operation of the business and which may differ from the determination of allowable business expenses for tax purposes.

Because this action was filed in 1992, we must interpret the Wisconsin Administrative Code provisions that were in effect at that time. Accordingly, our interpretation of the Chapter HSS 80 provisions is only applicable to cases arising under the chapter from August 1987 through February 1995.

> "Gross income adjusted for child support" means gross income adjusted by adding wages paid to dependant household members, the business assets depreciation allowance under 26 USC 179 and the excess of accelerated depreciation as determined under 26 USC 167, and 26 USC 168 over straight-line depreciation allowable under 26 USC 167 and subtracting public assistance and child and spousal support received from previous marriages.

WIS. ADM. CODE § HSS 80.02(13) (August 1987). Gross income is defined as "all income as defined under 26 CFR 1.61-1 that is derived from any source and realized in any form, whether money, property or services, and whether reported as total income on the payer's federal tax return or exempt from being taxed under federal law." WIS. ADM. CODE § HSS 80.02(12) (August 1987). Under 26 C.F.R. 1.61-1, gross income includes "income realized in any form, whether in money, property, or services." *See also Stephen L.N.*, 178 Wis. 2d at 472, 504 N.W.2d at 425.

The supreme court recently reiterated:

> The determination of appropriate child support is committed to the sound discretion of the circuit court. Whether the trial court properly exercised its discretion is a question of law. "An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."

*Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561, 566 (1996) (citations omitted). We conclude that the trial court used improper standards of law by applying the marital property act in calculating Lee's basis, deducting depreciation from Lee's gross

income, and excluding imputed farm income from his gross income.

## A. Marital Property Law

Reasoning that "[b]ecause Wisconsin is a community property state, the income earned is attributable to each spouse equally," the trial court determined Lee's base income by calculating one-half of the adjusted gross income recorded on his and his wife's joint 1991 federal income tax return. In determining child support in a paternity action, whether a trial court may calculate a father's base income by dividing his and his wife's adjusted gross income according to marital property standards is an issue of first impression. With guidance from the supreme court's consideration of similar issues in the context of divorce and child support, however, we conclude that the trial court erred in doing so.

In *Abitz v. Abitz*, 155 Wis. 2d 161, 455 N.W.2d 609 (1990), declaring "that marital property principles of income are not to be considered under statutes in ch. 767 which deal with issues of child support," *id.* at 182, 455 N.W.2d at 618, the supreme court explained that a trial court could not consider a wife's marital property rights in her husband's income when determining her gross income for purposes of *setting* child support under Chapter 767. *Id.* at 172, 455 N.W.2d at 614. The supreme court further explained, however, that a trial court may consider both spouses' incomes when determining their overall financial circumstances for purposes of *satisfying* their support obligations. *Id.*

In *Abitz*, the supreme court acknowledged the legitimate distinction between a person's "earning capacity" and "total economic circumstances," the former affecting the *setting* of child support and the latter

456

potentially affecting the *satisfying*. *Id*. at 172-74, 455 N.W.2d at 614-15. The supreme court explained:

> The distinction between the setting of and the satisfaction of a child support award keeps a circuit court's review of total economic circumstances properly unrestricted by considerations that might otherwise be made of marital property definitions of income.
>
> . . . .
>
> Absent the distinction between setting and satisfying a child support obligation, it is clear that the protections afforded the nonobligated spouse would override the goals of child support by greatly restricting the income sources that the circuit court could consider when determining ability to pay.

*Id*. at 176-78, 455 N.W.2d at 615-16.

Consistent with that reasoning, when setting child support in a paternity action, a trial court first must calculate the father's income and *set* his child support obligation, exclusive of any marital property law principles. Then, in determining his ability to *satisfy* his obligation, the trial court can consider his marital property rights in his wife's income as part of its evaluation, under § 767.51(5)(b) and (c), STATS., of his "standard of living and circumstances" and his "financial means." Thus, we conclude that the trial court erred in calculating Lee's income for purposes of setting Brad's support by applying marital property principles and simply presuming Lee's income to be one-half of his and his wife's joint income.[10]

---

[10] The parties vigorously argue over the income value of Lee's wife's contributions to the farming and logging businesses. This, of course, may have a significant impact on the

## B. Depreciation

WISCONSIN ADM. CODE § HSS 80.02(13) (August 1987) provides, in part, that "gross income adjusted for child support" includes "the business assets depreciation allowance under 26 USC 179 and the excess of accelerated depreciation as determined under 26 USC 167 and 26 USC 168 over straight-line depreciation allowable under 26 USC 167." The trial court found "in this instance that adding the value of depreciation allowance" to Lee's income "would lead to a monthly child support amount that would be more than necessary and unreasonable."

A trial court has discretion to determine whether to add back depreciation when calculating a payer's income for child support. *Stephen L.N.*, 178 Wis. 2d at 477, 504 N.W.2d at 427. The trial court's discretionary determination "will not be disturbed [if] there is a reasonable basis for the determination." *Id.* at 476, 504 N.W.2d at 427.

■

Here, the trial court failed to articulate any basis for its determination. It failed to explain its finding that the inclusion of depreciation value "would lead to a monthly child support amount that would be more than necessary and unreasonable." Inevitably, the trial court's conclusion is inextricably connected to its use of erroneous standards in determining Lee's basis and income, and his obligation for past and future support.[11] Thus, on remand, the trial court must evaluate

trial court's determination of Lee's income and will have to be considered carefully by the trial court on remand.

[11] Additionally, we note Brad's argument that Lee refused to comply with the trial court's discovery order. Thus, it may be that on this issue, as well as on the determination of Lee's and

whether and to what extent depreciation value should be included in Lee's income.

## C. Imputed Income

WISCONSIN ADM. CODE § HSS 80.02(14) (August 1987) defines "imputed income for child support," in part, as "the amount of income ascribed to assets which are unproductive." For the determination of gross income for child support, WIS. ADM. CODE § HSS 80.05 (August 1987) permits consideration of the earning potential of unproductive assets and specifies how to calculate the imputed income of the assets. *See Zimmerman v. Zimmerman*, 169 Wis. 2d 516, 522, 485 N.W.2d 294, 297 (Ct. App. 1992) (imputed income should reflect the income-producing ability of the assets).

Pointing to Lee's substantial farm losses offsetting his substantial logging business profits, Brad argues:

> The farm that Lee D. owns and operates is an unproductive asset. The farm has not produced any appreciable income. Lee D. continues to finance a business that loses money. While there is no suggestion of shirking as a motive for this practice, the farming venture nevertheless reduces Lee D.'s income for child support purposes. An income value should be ascribed to the farm assets as imputed income which should then be added to Lee D.'s gross income to calculate his gross income adjusted for child support. Imputed income related to this asset is necessary to more accurately reflect Lee D.'s total income available for child support.

his wife's incomes, the trial court may require additional evidence.

Again, Brad is correct. The trial court should have considered Lee's possible imputed farm income in determining his child support.

## VI. FUTURE CHILD SUPPORT FOR COLLEGE

Finally, Brad argues that the trial court erred in ruling that the monthly child support "amount is subject to modification . . . to pay for Brad's education . . . in the event that Brad's academic records are adequate." On this issue, Lee concedes the trial court's error.

Under § 767.51(5)(e), STATS., "[t]he need and capacity of the child for education, including higher education" is one factor that may form a basis for deviation from the percentage standards. A trial court's evaluation of this factor, however, may not continue after the child has become an adult. As this court explained:

> [A]lthough there may be strong reasons or even a moral responsibility to do so, the law does not require any parent to support his or her adult children. There is nothing to indicate that the legislature intended to alter that basic proposition in drafting the child support statute. Although parents should take an interest in their children's education beyond high school, we cannot dictate that they do so. Consequently, it was error for the court to consider [the adult child's] potential expenditures as an adult in setting child support.

*Resong v. Vier*, 157 Wis. 2d 382, 391, 459 N.W.2d 591, 594 (Ct. App. 1990). Thus, under a child support order, a trust may be established to provide for future educational needs, but "any payments to a trust must be made from child support payments paid while the child

is still a minor." *Mary L.O. v. Tommy R.B.*, 199 Wis. 2d 186, 201, 544 N.W.2d 417, 423 (1996). Therefore, the trial court erred in determining child support with the expectation that it could modify the order after Brad reached adulthood to account for his college costs.

## VII. CONCLUSION

Accordingly, we affirm the order of paternity but remand for further proceedings to properly determine past support for the approximate fifteen years preceding the paternity action, and "future" support for the approximate three years from the commencement of that action to the time of Brad's adulthood.[12]

---

[12] In this case, the State of Wisconsin also sought reimbursement from Lee, under § 49.19(4)(h)1.b, STATS., for a pro rata share of the support it paid on behalf of Brad from 1977 through 1988. Because the trial court concluded that Lee was not liable for any support during those years, it also concluded that it would be "inequitable for the father to pay any amount recoverable by the State for payments issued to the mother."

Clearly, consistent with this court's decision, on remand the trial court ordinarily would have to revisit the State's request. In this case, however, we also note that the trial court stated a separate basis for its denial of the State's request:

> The court also finds that the State did not act with due diligence to discover the existence of the father to proceed against him for child support payments rather than making the child a public charge. Evidence has been submitted by . . . Lee [ ] that an index card was filed by Catherine [ ] for child support payments with the State. The index card identifies Lee [ ] as the father. The index card is dated October of 1977, before Brad [ ] was born. The [S]tate, therefore, had reason to know who the father was in order to bring an action against him.

This court granted the State's request to file a non-party brief in this appeal. On the State's behalf, counsel for the Milwaukee County Department of Child Support Enforcement has done so. The State's arguments, however, challenge only the

461

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

first basis for the trial court's denial of the State's request. Additionally, the State merely mentions that it "attempted to commence an action in 1977 but could not locate the alleged father." The State offers no argument disputing the trial court's conclusion that it failed to act with due diligence. Accordingly, we affirm the trial court's denial of the State's request for reimbursement from Lee.