IN RE the PATERNITY OF WALA P.:

STATE of Wisconsin, Petitioner-Appellant,

JOYCE P., Petitioner,

v.

ALONZO R., Respondent-Respondent.

Court of Appeals

*Nos. 98–3333–FT, 99–0396–FT. Submitted on briefs June 30, 1999.—Decided August 10, 1999.*

(Also reported in 601 N.W.2d 328.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John A. Pintar* of *Milwaukee County Child Support Agency* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Mary H. Payne* of *Mary H. Payne Law Office* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. The State of Wisconsin for the Milwaukee County Child Support Agency appeals from an order denying its motion for reconsideration of an order and judgment made by the Honorable John F. Foley who, in turn, had reconsidered and affirmed an earlier order of the Honorable John E. McCormick.[1]

The State claims that the trial court erred: (1) when it concluded that the percentage standards did not apply in setting past support; (2) when it found that Alonzo R.'s current net income was to be the sole determining factor in reducing his liability for past support; and (3) when it reduced Alonzo R.'s liability for past support from nearly $30,000 to $4,000. Because the last reviewing court that denied the State's motion for reconsideration did not erroneously exercise its discretion, we affirm.

## BACKGROUND

Wala P. was born out of wedlock on November 21, 1987. Joyce P. is her mother. On December 11, 1995, Joyce filed a paternity petition to establish that Alonzo was Wala's father. On February 20, 1996, a family court commissioner (FCC) for Milwaukee County entered judgment concluding that Alonzo was the father of a female, "W. P.," born from a relationship with Joyce. The FCC determined that the pre-judgment assessments for birth expenses and blood tests amounted to $2,149, which was to be repaid at the rate

---

[1] The Hon. Michael D. Guolee signed the order appealed.

19

of $5 per month, and that Alonzo was to contribute to the future support of the child at the rate of $43 per month. The FCC also concluded "that, by the greater weight of the credible evidence, the percentage guidelines were not appropriate . . . because the respondent's net income would be insufficient to meet his needs." At Alonzo's request, the matter was certified to the circuit court for a complete determination of the issues of past support.

After briefing and oral argument on independent review, Judge McCormick found that neither the mother nor Alonzo believed that the latter was the father of the child until the child was seven years of age. In fact, Alonzo did not know of, or suspect, the existence of the child until January 18, 1995. The mother believed that the child was conceived during a relationship with another party, as demonstrated by her affidavit in a separate paternity action. Based on these facts, the circuit court made a discretionary determination that it would be inequitable and unfair to establish full past support retroactive to the date of birth. The court, however, upon an offer of proof made by Alonzo, set past support at $4,000. Accordingly, the court ordered that past support be set at the sum of $4,000, with payments to be made at the rate of $12 per month commencing November 1, 1997. The court denied the State's request for an increase in current support because Alonzo had serial support orders for a different non-marital child under which Alonzo was paying $305 per month, and he had a marital child, plus debts of the latter marriage. Such circumstances placed Alonzo's net income below the poverty level. Furthermore, the circuit court affirmed the FCC's conclusion that it would be unfair to Alonzo, by the great weight of the credible evidence, pursuant to

§ 767.51(5)(b), STATS., to establish current support under the percentage standards. Current support payments were to continue at the rate of $43 per month as well as payments for birth expenses and blood tests at the rate of $5 per month.

On August 25, 1998, Judge Foley, at the behest of the State, reconsidered the order of Judge McCormick, pursuant to § 805.17(3), STATS. For the same reasons, and additional reasons, Judge Foley affirmed Judge McCormick in both oral and written findings.[2] The State now appeals.

## ANALYSIS

*A. Standard of Review.*

In reviewing an order denying a motion for reconsideration, we apply the same erroneous exercise of discretion rubric as we do in reviewing an order denying the underlying motion. Exercising discretion contemplates a reasoned application of proper principles of law to the facts of the case. *See Resong v. Vier,* 157 Wis. 2d 382, 387, 459 N.W.2d 591, 593 (Ct. App. 1990). Similarly, the determination of back support in paternity cases, like the determination of child support in general, is committed to the discretion of the trial court. *See State v. Jason J.C.,* 181 Wis. 2d 868, 870, 512 N.W.2d 522, 523 (Ct. App. 1994). The court may modify the amount of back support upon considering the factors in § 767.51(5), STATS., if it determines that the use

---

[2] Without a full record before us demonstrating to the contrary, we presume the record provides a reasonable basis for the determinations of both trial courts. *See D.L. v. Huebner,* 110 Wis. 2d 581, 597, 329 N.W.2d 890, 897 (1983).

of the percentage standard is unfair. *See Stephen L.N. v. Kara L.H.*, 178 Wis. 2d 466, 479, 504 N.W.2d 422, 427 (Ct. App. 1993).

## B. Percentage Standards.

The State claims that the trial court erred when it concluded that the percentage standards set forth in WIS. ADM. CODE § HSS 80.03 do not apply when past support is set against a serial family payer. We conclude there is no basis for this claim.

The State asserts that "[t]he percentage standards must be used when determining a support obligation." The State is wrong. WIS. ADM. CODE § HSS 80.03 details the percentage methodology for determining child support. After detailing how child support is to be calculated in subsections (1)–(6), it expressly provides in subsection (7):

> DEVIATION FROM THE PERCENTAGE STANDARD. (a) Upon request by a party, the court may modify the amount of child support payments determined under sub. (1) if, after considering the factors in s. 767.25 (1m) or 767.51 (5), Stats., as applicable, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties.

Section 767.51(4m), STATS., implementing the above, further provides: "Except as provided in sub. (5), the court shall determine child support payments by using the percentage standard established by the department under s. 49.22 (9)." Subsection (5) then expressly declares that if requested by a party, "the court may modify the amount of child support payments determined under sub. (4m) if, after considering [the

fourteen factors set forth[3]], the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to the requesting party." Thus, the statute, contrary to the State's view, does permit the court to deviate from the presumptive application of the standards.

The State also claims that the trial court erred when it concluded that, because a serial payer was involved, the percentage standards do not apply. Instead, the State argues, the trial court should have applied WIS. ADM. CODE § HSS 80.04(1), *"Determining the Child Support Obligation of a Serial-Family*

---

[3] Section 767.51(5), STATS., sets forth the following factors:

(a) The needs of the child.

(am) The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (3m).

(b) The standard of living and circumstances of the parents, including whether a parent receives maintenance payments under s. 767.26 and the needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 USC 9902 (2).

(c) The relative financial means of the parents.

(d) The earning capacity of each parent, based on each parent's education, training and work experience and based on the availability of work in or near the parent's community.

(e) The need and capacity of the child for education, including higher education.

(f) The age of the child.

(g) The financial resources and the earning ability of the child.

(gm) Any physical custody arrangement ordered or decided upon.

(gp) Extraordinary travel expenses incurred in exercising the right to periods of physical placement.

(h) The responsibility of the parents for the support of others.

(i) The value of services contributed by the custodial parent.

(im) The best interests of the child.

(j) Any other factors which the court in each case determines are relevant to the best interests of the child.

23

*Payer*," which incorporates HSS 80.03 in assessing past support. We disagree. The introductory sentence to HSS 80.04(1) declares that the methodology detailed in HSS 80.04 *may*, in the instance of a serial family payer, be utilized, but the language is clearly permissive, not mandatory; therefore, its application is left to the sole discretion of the trial court. *See generally Brown v. Brown*, 177 Wis. 2d 512, 503 N.W.2d 280 (Ct. App. 1993).

## C. Income Sole Factor.

Next, the State claims that the trial court erred when it found Alonzo's current net income to be the sole determining factor in reducing his liability for past support. We reject this contention because our review of the record demonstrates that this was not the sole factor relied on by the trial court.

Initially, we note that the FCC was the first to conclude that the percentage standards would be unfair to apply in the instant case. Judge McCormick, and then Judge Foley, came to the same conclusion. For the purposes of analysis, it serves us well to set forth their respective oral and written findings of fact and conclusions of law. Judge McCormick indicated in pertinent part:

> With regard to the past support which has been calculated by the State of Wisconsin to be $21,334 and that would be from '89 to '94 on the basis of 14 percent until '92 when it was calculated '92, '93, '94 at 12 percent, we get that figure of 21,334. The court has taken into consideration Mary Payne's argument that this child was almost eight years old before the father was informed that he was the possible father, that would be on the date of 1–18–95. The court feels that the discretion of the court would

24

somehow lean in favor of the father, the suspected father in this case whose name is Alonso R.[ ], and the court will give deference to the 202 Wisconsin, 461 case where in that case the child was almost 18 when they first sought the father, and there was a reduction in that case.

The court at this time considers the reduction as requested by Mary Payne to be set at 4,000 to be fair and equitable considering all of the factors of this case. This is a unique case insofar as there was no way that this man knew that he was the suspected father until January 18, 1995, therefore, the court is exercising its discretion, which I think is fair and equitable, to not assess him for the full amount of the 21,000 but rather $4,000. That will be the cha[r]ge for the past support.

Judge McCormick's follow-up written findings and order, in part, added the following:

3. Under the circumstances of this case where neither the mother nor the Defendant believed that Defendant was the father of the child until the child was seven (7) years of age and the father, in fact, did not know of or suspect the existence of the child until January 18, 1995, and the mother had acted in belief that the child was conceived of a relationship with another party, as shown by her Affidavit in another action. . . . it would be inequitable and unfair to establish full past support back to the date of birth of the minor child because the father has gone on with his life without this knowledge and made lifestyle decisions which affect his standard of living and circumstances, his relative financial means and he now has a responsibility for the support of others.

4. . . . [I]t is appropriate to establish some past support. Guided by the Court of Appeals['] approval of a $15,000.00 past support order for the entire

25

period of minority in the *Mayonia M.M. v. Keith N.* action at 202 [Wis.] 2d [460] (Ct. App. 1996) and upon the offer of the Defendant, the Court sets past support at $4,000.00 in addition to the laying in expenses and the costs of the blood tests herein.

5. It is appropriate to enter a current order for repayment of the past support.

6. The State also requests an increase in current support. However, the Defendant's circumstances have not improved subsequent to the entry of the previous Order herein. He is still obligated to support another non-marital child at the rate of $305.00 per month, a marital child and the debts of that marriage pursuant to the Judgment and Order of another Court, leaving his net income below the [poverty] level for the time being. The Court notes that a substantial past support order has been entered in the other paternity case and the Court did not set a current repayment order on that sum, apparently because of the same set of circumstances. Further, it would be unfair to the Respondent, by the great weight of the credible evidence . . . to establish current support under the percentage standards. The Respondent would be unable to support himself and pay the support indicated by the standards as calculated by the State of $323.00 per month.

Judge Foley rendered the following oral findings:

Well there's—at this present time there are three orders for support. This is certainly a serial support issue. The guidelines are not applicable in this particular situation. He has three orders, three separate orders for support. I'm basing my determination here upon, one, the most important, the polestar issue, which is his ability to pay. I've got before me the earnings statement indicating that he earned in the pay period October—August 1st,

1998, he receives—his gross pay was 1,495.92. His total deductions were 1,474.52, and of that there were $225 as a savings allotment and discretion amount, so he had approximately $225 to live on bi-weekly. There's no way in—in the world based upon this income at this time that this gentleman can—can pay anymore than he is paying.

Accordingly, the court will again set the amount of arrearage at $4,000. You have to be reasonable in these matters, too. There's no way that he can pay anything more than that. And let the record so reflect.

The written corrected findings read as follows:

1. The court is reconsidering the order issued by Judge McCormick;

2. The court must consider the needs of the child and the ability of the person to pay;

3. Mr. R[.'s] lack of knowledge that he fathered this child is not a defense;

4.. Mr. R[.] has 3 support orders, and the serial family guidelines do not apply;

5. Mr. R[.'s] 8/1/98 paycheck indicates his gross gross [sic] income was $1,495.92;

6. His total deductions were $1,474.52, and there was a $225.00 as a savings allotment;

7. Mr. R[.] cannot pay anymore than he is paying;

## ORDER

Based upon Respondent's net income, the court again sets past support due the State at $4,000.

The State argues that neither § 767.51, STATS., nor HSS 80 provide for deviation from the percentage stan-

27

dards in setting past support *solely* because the payer has a current reduced ability to re-pay past support. The State reasons that, at best, the trial court's decision is based on only two of fourteen possible factors to be considered: the standard of living and circumstances of the payer, § 767.51(5)(b), STATS., and the responsibility of the parents for the support of others, § 767.51(5)(h), STATS.

In concluding that a deviation from the standard guidelines is warranted, a trial court does not need to apply all fourteen factors set forth in § 767.51(5), STATS., in a check-list fashion. The child support guideline standards are not mandatory but "presumptively" applicable, absent a showing of unfairness by a great weight of the credible evidence. *See Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 285, 544 N.W.2d 561, 563 (1996). A court need consider only those factors that are relevant. *See Mary L.O. v. Tommy R.B.*, 189 Wis. 2d 440, 466 n.1, 525 N.W.2d 793, 804 n.1 (Ct. App. 1994) (Nettesheim, J., dissenting), *rev'd in part*, 199 Wis. 2d 186, 544 N.W.2d 417 (1996) (approving the analysis in J. Nettesheim's dissent); *Hubert v. Hubert*, 159 Wis. 2d 803, 814–15, 465 N.W.2d 252, 256 (Ct. App. 1990) (court must consider only *relevant* factors of statute in determining child support). In the instant case, most of the statutory factors were not relevant because the recipient of any back support was the State rather than the child.

It is evident from the record that, when denying the State's motion to reconsider Judge McCormick's decision, Judge Foley "read the entire record." This assertion implies a review of whatever record was created before the FCC and Judge McCormick. At both the FCC level and in two independent trial court reviews,

conclusions were reached that unfairness existed by the great weight of the credible evidence relative to application of the percentage standards. Without a showing to the contrary, we can assume support in the record for sufficient findings to support the conclusion of law reached by the FCC and the two circuit courts that reviewed the matter. *See Nielsen v. Waukesha County Bd. of Supervisors*, 178 Wis. 2d 498, 523, 504 N.W.2d 621, 631 (Ct. App. 1993).

More specifically, however, after hearing the evidence presented upon review, Judge McCormick stressed the unique character of the case, Alonzo's lack of knowledge that he was the father, and the denial by the mother that Alonzo was the father with the resultant effect of living a totally different way of life. When Judge Foley reviewed the matter, he not only had Judge McCormick's analysis and conclusion before him, but he also focused on Alonzo's ability to pay, taking into consideration all of his other paternal obligations, which had not been the primary emphasis of Judge McCormick. For reasons not altogether clear, the State places undue attention on precisely the factor to which Judge Foley gave the greatest weight after he had reviewed the entire record. In so doing, the State forms the illogical conclusion that the income factor was the *sole* factor the court used in reaching its decision.

It is not the duty of this court to search the record to find evidentiary support for the positions of the litigants. Contrary to the opinion of the State, there are sufficient reasons in the record to support the thrice determined conclusion that it would be unfair to apply the percentage standards. In succinct terms, the State, in moving for reconsideration, has not met its burden

to establish that the trial court erroneously exercised its discretion in this claim of error.

## D. Reduction of Past Support.

Lastly, the State claims that the trial court erroneously exercised its discretion when it reduced Alonzo's liability for past support from nearly $30,000 to $4,000 based upon his current net income. It bases this claim upon an erroneous finding of Alonzo's current net income. We reject this claim.

The State's position is based upon "what could have been, should have been." We, too, have searched the record and note that, although there were dollar variations at the three levels of fact-finding, there is a reasonable basis in the record for these differences and certain sums that the State argues should have been added back in to determine net income, nevertheless, were taken into consideration in determining Alonzo's reasonable, common sense ability to shoulder additional obligations. It is not our task to conclude what ought to have been the appropriate amount for past support. Rather, we decide only whether the trial court erroneously exercised its discretion when, after reviewing the entire record, it concluded that the reduction to $4,000 from an alleged amount past due of anywhere from close to $30,000 to $21,000 had no basis in the record. We conclude there was a reasonable basis for the past support amount awarded.[4]

---

[4] We note that at no time during the protracted litigation of this case was there any consistency as to the amount claimed to be owed for past support. At three separate hearings, the State calculated three different amounts: $21,334, $29,690 and $21,000. We further note that the amount of $4,000 was derived

30

Based on the foregoing, we affirm.

*By the Court.*—Order affirmed.

---

from an offer of proof that was made by Alonzo based upon his perceived ability to pay, which the two circuit court judges obviously valued as reasonable. We cannot conclude such a determination was erroneous.