IN RE the PATERNITY OF BRENTON T.C.:

STATE of Wisconsin, Petitioner,

v.

PATRICK G.B., Respondent-Appellant-Cross-Respondent,

CINDY L.D., Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 00–1308. Submitted on briefs December 18, 2000.—Decided February 7, 2001.*

## 2001 WI App 85

(Also reported in 627 N.W.2d 898.)

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Joseph J. Welcenbach* of *Welcenbach & Widmann, S.C.* of Milwaukee.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Jennelle London Joset* of *Obernberger & Joset, LLP* of Milwaukee.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Patrick G.B. appeals from an order of the circuit court setting child support arrearages at $22,443 and awarding statutory interest on those arrearages at 1.5% per month. Patrick argues that the arrearages found by the circuit court were improper in light of current case law, and that interest should not accrue on arrearages so long as the payer is current on payments. Cindy L.D. cross-appeals, arguing that the circuit court erred in applying the serial

family payer formula in determining child support and by awarding Patrick the tax exemption for the child. We agree with Patrick's assertions that all of the issues herein must be evaluated in light of recent case law. We further note that it is not entirely clear whether the serial family payer formula was utilized. We therefore reverse and remand this matter to the circuit court for proceedings consistent with this opinion.

## FACTS

¶ 2. Brenton T.C., the minor child in this action, was born on September 6, 1988. The mother, Cindy, commenced a paternity action in 1998. Following genetic testing, Patrick admitted paternity of Brenton.

¶ 3. On March 19, 1999, a hearing was held before Judge Patrick C. Haughney regarding child support, child support arrearages and other claims. Cindy testified that on numerous occasions both before and after Brenton's birth, she informed Patrick and Patrick's parents that he could be Brenton's father and that she had made numerous attempts to locate him. However, Patrick testified that he had joined the navy and that Cindy had been aware of his enlistment; Patrick further testified that Cindy had "made speculation" that he was the father, but also that there were four other gentlemen who could possibly be Brenton's father. Paternity actions were commenced against two other men before Patrick, and a fourth man was also named as Brenton's potential father. Patrick testified that he did not know with any certainty that he was Brenton's father until the paternity test was completed.

¶ 4. In addition, Patrick testified that he had married in 1990 and had two other children, born in 1995 and 1997. Patrick testified that he might have

made different decisions in his life had he known of Brenton's existence. He testified that, for example, he might not have stayed in the military, he might not have purchased a house, and he might not have had two children had he known about Brenton.

¶ 5. At this March 19, 1999 hearing, Judge Haughney found that there was no conclusive proof of paternity until the DNA testing was completed and that Patrick had not been aware of Brenton's existence until the commencement of the paternity case. Judge Haughney rejected Cindy's testimony that she made repeated attempts to find Patrick because she definitively knew he was Brenton's father and accepted the testimony of Patrick that some of his life choices might have been different had he known of Brenton's existence.

¶ 6. Judge Haughney then calculated child support arrearages from the date of Brenton's birth, September 6, 1988, until Patrick's wedding date, May 19, 1990, at the rate of 17%. Relying on *Brad Michael L. v. Lee D.*, 210 Wis. 2d 437, 564 N.W.2d 354 (Ct. App. 1997), Judge Haughney specifically stated that Patrick's ignorance of Brenton's existence was not a reason to deviate from the percentage standards of WIS. ADMIN. CODE § HSS 80.03[1] during this time period. However, from May 19, 1990, until March 19, 1999 (the date of the hearing), arrearages were established at a rate of 12.75%, with future child support to remain at 12.75%. Judge Haughney found that the application of the percentage standards after May 19, 1990 "would be unfair to [Patrick] under 767.25(1m)." Judge Haughney deviated from the percentage standards after May 19, 1990, the date of Patrick's marriage, because Patrick

---

[1] WISCONSIN ADMIN. CODE ch. HSS 80 was renumbered ch. DWD 40 in July 1999.

then became legally obligated for his wife's support. Judge Haughney held that equity demanded that past support, from May 19, 1990, through March 19, 1999, be established at 12.75%. The arrearages were calculated according to Judge Haughney's determinations and found to be $22,443. Judge Haughney also established future support at 12.75%, deviating from the percentage standards because of Patrick's marriage, his life-style choices and his two marital children. The hearing was then adjourned for further proceedings.

¶ 7. On March 26, 1999, Cindy filed a motion to reconsider Judge Haughney's oral pronouncements. A hearing was held on May 26, 1999. However, instead of addressing Cindy's motion to reconsider, Judge Haughney allowed Cindy's attorneys to withdraw as her counsel. Judge Haughney adjourned the proceedings and gave Cindy two weeks to file a letter with the court indicating that she wanted to pursue the motion to reconsider either pro se or with new counsel. Despite the announced intention of adjournment, that same day Judge Haughney signed a findings of fact, conclusions of law and judgment of paternity, memorializing the findings of the March 19, 1999 hearing. While Judge Haughney never addressed the issue of interest on arrearages at the March 19, 1999 hearing, the judgment of paternity indicated that no interest on arrearages was to be assessed.

¶ 8. On August 2, 1999, Judge Haughney notified the parties of a September 16, 1999 hearing to address Cindy's motion for reconsideration; the hearing notice advised the parties that the hearing would be held before Judge Lee S. Dreyfus, Jr. After Patrick filed a motion to reduce the amount of arrearages and to clarify and modify Judge Haughney's previous judgment, the hearing was rescheduled for October 14, 1999. Pat-

rick's motion was based upon case law issued subsequent to Judge Haughney's judgment. On October 27, 1999, Cindy, by new counsel, filed an amended motion for reconsideration. A hearing to address these motions was then scheduled for December 1, 1999.

¶ 9. At the December 1, 1999 hearing before Judge Dreyfus, Patrick asked the court to reduce the arrearages based upon new case law, to allow Patrick the tax deduction for Brenton, and to clarify whether any interest on arrearages had been awarded. Cindy argued that Judge Haughney's determination that Patrick was a serial family payer, which reduced the percentage of his child support payments, and his decision to release Patrick from interest on the arrearages were in error. Cindy also argued against Patrick receiving the tax deduction for Brenton.

¶ 10. On April 12, 2000, Judge Dreyfus issued an order in this matter, determining the arrearages of record to be set pursuant to Judge Haughney's order in the amount of $22,443, effective March 19, 1999, with statutory interest of 1.5% per month applicable to the arrearages starting March 19, 1999. Using the percentage standards as determined by Judge Haughney, current support was set at $361.73 per month, with arrearages to be paid in the amount of $200 per month. Patrick was entitled to use the tax exemption for Brenton for the year 2000 and for all subsequent tax years so long as he continued to pay support and remained current in his support obligations. Judge Dreyfus's order did not address the serial family payer issue.

¶ 11. Patrick appealed Judge Dreyfus's order and Cindy cross-appealed.

## DISCUSSION

¶ 12. A determination of child support is committed to the sound discretion of the circuit court. *Brad Michael L.*, 210 Wis. 2d at 446. Exercising discretion contemplates a reasoned application of proper principles of law to the facts of the case. *Wala P. v. Alonzo R.*, 230 Wis. 2d 17, 21, 601 N.W.2d 328 (Ct. App. 1999). Furthermore, the determination of back support in paternity cases, like the determination of child support in general, is committed to the circuit court's discretion. *Id.* We must reverse a discretionary decision that misapplies the law. *Brad Michael L.*, 210 Wis. 2d at 446. In reviewing an order denying a motion for reconsideration, we apply the same erroneous exercise of discretion standard that we use when reviewing the underlying judgment or order. *Wala P.*, 230 Wis. 2d at 21.

¶ 13. Patrick argues that the arrearages determined and the interest established by the circuit court were improper based upon present case law. We conclude that the issues presented in this case must be reexamined in light of the holding in *Wala P.*

¶ 14. Judge Haughney calculated child support arrearages from the date of Brenton's birth, September 6, 1988, until Patrick's wedding date, May 19, 1990, at the rate of 17%. Judge Haughney also established future support at 12.75%. In arriving at his decision, Judge Haughney relied primarily upon *Brad Michael L.*, 210 Wis. 2d at 437.

¶ 15. In *Brad Michael L.*, a fifteen-year-old child brought a paternity action against his putative father. *Id.* at 443–44. The parties stipulated that the father had not known of Brad's existence for the first fifteen years of the child's life. *Id.* at 445. In the fifteen years

since Brad's birth, the father had married and fathered two children. *Id.* After DNA results determined that Lee D. was Brad's father, the trial court made a finding of paternity and determination of child support, ordering Lee to pay $500 monthly for future support, but denying past support, concluding that the application of WIS. STAT. § 767.51(4)[2] would be unfair to Lee because he had not known of Brad nor had he had an opportunity to develop a relationship with him. *Brad Michael L.*, 210 Wis. 2d at 445. We affirmed in part and reversed in part. *Id.* at 442. We concluded that the retroactive application of § 767.51(4) was appropriate and therefore Lee was liable for past support starting after Brad's birth even though Lee lacked knowledge of Brad's existence. *Brad Michael L.*, 210 Wis. 2d at 449.

¶ 16. On August 10, 1999, *Wala P.* was issued. Wala P. was born out of wedlock in 1987; in 1995, her mother brought a paternity action against Alonzo R. as Wala's father. *Wala P.*, 230 Wis. 2d at 19. A family court commissioner (FCC) concluded, among other things, that the application of the percentage standards was inappropriate. *Id.* at 20. Alonzo sought certification to the circuit court for the determination of past support issues. *Id.* The circuit court made a discretionary decision that it would be inequitable and unfair to establish full past support retroactive to the date of birth. *Id.* However, the circuit court said past support was necessary and established it at $4,000,

---

[2] WISCONSIN STAT. § 767.51(4) (1997–98) provided, in relevant part, "The father's liability for past support of the child shall be limited to support for the period after the birth of the child." Previously, a father's liability for past support of the child in a paternity case was statutorily limited to support for the period after the commencement of the paternity action. WIS. STAT. § 767.51(4) (1985–86).

with monthly payments for both past and future support. *Id.* In addition, the circuit court affirmed the FCC's determination that it would be unfair to the father, by the great weight of the credible evidence pursuant to WIS. STAT. § 767.51(5)(b), to establish current support under the percentage standards. *Wala P.*, 230 Wis. 2d at 20–21. The State appealed. *Id.* at 21.

¶ 17. We affirmed the decision of the trial court, holding that WIS. STAT. § 767.51(4m) and (5) allow the trial court, when determining child support payments, to deviate from the presumptive application of the percentage standards if the court finds, by the greater weight of the credible evidence, that use of the percentage standards is unfair to the child or to the requesting party. *Wala P.*, 230 Wis. 2d at 22–23. The child support guideline standards are not mandatory but "presumptively" applicable, absent a showing of unfairness by the great weight of the credible evidence. *Id.* at 28. In concluding that a deviation is warranted, a trial court need not apply all fourteen factors set forth in § 767.51(5) in a checklist fashion, but need only consider those factors that are relevant. *Wala P.*, 230 Wis. 2d at 28.

¶ 18. Therefore, reading *Brad Michael L.* and *Wala P.* together, WIS. STAT. § 767.51(4) (1997–98)[3] dictates that a father is responsible for a child's support for all years following his or her birth, whether or not the father knew of the child's birth; however, pursuant to § 767.51(4m), a court can deviate from the percentage standards when establishing both back and future support if, after considering the factors set forth in

---

[3] All remaining references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

§ 767.51(5), the court finds that by the greater weight of the credible evidence that use of the percentage standards is unfair to either the child or the requesting party.

¶ 19. Patrick brought the holding of *Wala P.* to the circuit court's attention in his postjudgment motion. While *Wala P.* was discussed at the December 1, 1999 hearing, the circuit court's April 12, 2000 order made no mention of this case and instead adopted and reaffirmed Judge Haughney's pre-*Wala P.* determination. There is no record that *Wala P.* was considered in arriving at these conclusions. While decisions regarding child support issues are indeed discretionary, we must reverse a discretionary decision that misapplies the law. *Brad Michael L.*, 210 Wis. 2d at 446. Because it appears that the circuit court failed to consider the implications of *Wala P.*, we therefore reverse the decision of the circuit court and remand this matter for reconsideration of all the issues in light of *Wala P.*

¶ 20. Because we are remanding this matter for reevaluation in light of *Wala P.*, we need not specifically address any further issues raised here save one. Cindy argues that the circuit court erred when applying the serial family payer formula in determining Patrick's support obligation. However, because of inconsistencies between the oral pronouncements and the judgment of paternity, it is unclear whether the serial family payer formula was actually applied in this instance.

¶ 21. WISCONSIN ADMIN. CODE § DWD 40.04 addresses the determination of child support obligations in special circumstances. Subsection (1) specifically addresses the determination of child sup-

port obligations of a serial family payer and states, in relevant part:

> This subsection applies only if the additional child support obligation incurred by the payer is the result of a court order and the support obligation being calculated is for children from a subsequent family or subsequent paternity judgment or acknowledgment.

A "serial family payer" is defined as "a payer with an existing legal obligation for child support[4] who incurs an additional legal obligation for child support in a subsequent family as a result of a court order." WIS. ADMIN. CODE § DWD 40.02(24). Therefore, the percentage standards of § DWD 40.04(1) only apply if the payer is considered a serial family payer as defined in § DWD 40.02(24).

¶ 22. In Judge Haughney's findings of fact, conclusions of law and judgment of paternity, the court held that Patrick would pay support at the rate of 12.75% of his gross monthly income, commencing March 19, 1999. Support was set pursuant to WIS. ADMIN. CODE ch. DWD 40, as Patrick was a serial family payer.

¶ 23. But the transcript of the March 19, 1999 hearing intimates that Judge Haughney did not apply the serial family payer formula, but instead chose to deviate from the child support percentage standards.

---

[4] WISCONSIN ADMIN. CODE § DWD 40.02(6) defines "child support" or "child support obligation" as

> an obligation to support a marital child either in an intact family or as a result of a court order, an obligation to support the payer's nonmarital child as a result of a court order, or an obligation to support the payer's nonmarital child in an intact family as a result of adoption, maternity or an acknowledgment of paternity.

At the hearing, Judge Haughney spent a great deal of time talking about the criteria for deviating from the child support percentage standards, pursuant to WIS. STAT. § 767.25(1m), and why he chose to deviate from those standards, pursuant to § 767.25(1m)(bz). Section 767.25(1m)(bz) states:

> **(1m)** Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:
>
> . . . .
>
> (bz) The needs of any person, other than the child, whom either party is legally obligated to support.

¶ 24. WISCONSIN ADMIN. CODE § DWD 40.03(1) through (6) detail how child support is to be determined in the absence of special circumstances such as the serial family payer situation. But § DWD 40.03(7) expressly provides for deviation from the percentage standards of subsecs. (1) through (6) if the court finds by the greater weight of the credible evidence that use of the percentage standards is unfair to the child or to any of the parties.

¶ 25. At the March 19, 1999 hearing, Judge Haughney stated: "What is of interest to the court is under [WIS. STAT. § 767.25(1m)](bz), the needs of any person, other than the child, whom either party is legally obligated to support." He further stated:

> Although I can find—by applying the serial family payor formula, the court is absolutely satisfied that for future support this forms a rational basis and

thus is not even a deviation from the child support standards, but is in effect application of the child support standards. The reason I'm taking this—the reason I'm doing this analysis under (1m) to not use the percentage standards is because for the time prior to 1995 the child support would be 17 percent. And it's only if there is some reason to deviate that the court should set it at less than that.

In the above passage, Judge Haughney did not state that he was actually applying the serial family payer formula. In fact, Judge Haughney appeared to specifically reject use of the serial family payer formula. Judge Haughney stated that if he were to apply the serial family payer formula, the 12.75% child support obligation would *not* be a deviation from child support percentage standards under the serial family payer formula. Judge Haughney then announced that he *was* going to deviate from child support percentage standards under WIS. STAT. § 767.25(1m)(bz). If applying the serial family payer formula is the equivalent of applying the child support percentage standards, and Judge Haughney announced his intention to deviate from the child support percentage standards, then Judge Haughney did not apply the serial family payer formula. Judge Haughney's oral pronouncements somewhat conflict with the written judgment of paternity.

¶ 26. At the December 1, 1999 hearing, Judge Dreyfus acknowledged that he needed to address the serial family payer issue. However, Judge Dreyfus's written decision and order did not address the serial family payer issue but merely adopted Judge Haughney's factual findings, stating that any prior orders that were neither modified by nor inconsistent with this order remained in effect. Thus, Judge

Haughney's conflicting oral and written rulings remained in effect, and it is unclear whether the serial family payer formula was actually applied.

## CONCLUSION

¶ 27. Because there is no evidence that the circuit court took *Wala P.* into account when making its determinations, we conclude that this matter must be remanded for reconsideration in light of the holding of *Wala P.* In addition, because it is not entirely clear whether the serial family payer formula was applied in this case, the circuit court may revisit the appropriateness of the application of the serial family payer formula on remand.

¶ 28. Costs are denied to all parties.

*By the Court.*—Order reversed and cause remanded with directions.