In re the Paternity of Cheyenne D.L.:

State of Wisconsin and Tammy K.L., Petitioners-Appellants,

v.

Jason J.C., Respondent-Respondent.

Court of Appeals

*No. 93–1748. Submitted on briefs December 14, 1993.—Decided January 11, 1994.*

(Also reported in 512 N.W.2d 522.)

For the petitioners-appellants the cause was submitted on the brief of *Traycee England* of Appleton.

For the respondent-respondent the cause was submitted on the brief of *Paul Van Berkel* of Kaukauna.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The State appeals an order requiring Jason J. C., who was adjudicated the father of Cheyenne D. L., to pay 17% of his income for Cheyenne's support but failing to require Jason to pay 17% of his income from the date of Cheyenne's birth to the date of the paternity adjudication. The State contends that the trial court erred by concluding that Jason was entitled to an equitable credit for the amount that would otherwise be due the State because during this time Jason and Cheyenne's mother, Tammy K. L., lived together and Jason actually supported them. The State argues that because Tammy was receiving AFDC benefits and had assigned her right to child support payments to the State, the court erred by refusing to order Jason to pay to the State 17% of his earnings from the date of Cheyenne's birth to the date of the paternity determination. We conclude that the court has discretion to determine whether to order past support obligations. We further conclude that the trial court did not erroneously exercise its discretion by crediting Jason with supporting Tammy and Cheyenne. We therefore affirm the order.

Cheyenne was born to Tammy on December 10, 1991. The petition to establish Cheyenne's paternity alleged that Tammy had sexual intercourse with Jason and another man during the period of conception. The court-ordered blood tests eliminated the other man as the father and indicated a 99.80% probability that Jason was Cheyenne's father. In October 1992, the court commissioner adjudicated Jason as the father after he admitted paternity and ordered Jason to pay 17% of his gross income for child support from December 10, 1991, through the hearing date.

At Jason's request, the trial court held a hearing in February 1993, at which Jason testified that he, Tammy, Cheyenne and Tammy's other child lived together as a family unit from the date of Cheyenne's birth until January 8, 1993. Tammy received AFDC during this period for herself and another child, as well as Cheyenne. Jason testified that during this period he contributed to rent and paid for utilities, food, clothing and other household expenses. The court found that Jason earned approximately $2,100 per month gross income during this period, and that, except for a $15 per week contribution to his 401K, Jason expended all of his net income on household expenses for the family unit. The court further found that Tammy's AFDC grant increased approximately $77 per month due to Cheyenne's birth. Based on these findings, the court ordered Jason to pay 17% of his gross income for Cheyenne's support, retroactive to the date of Cheyenne's birth. The court also concluded, however, that Jason was entitled to a credit of 17% of his gross income for Cheyenne's support during the period he supported Tammy and Cheyenne. Jason's child support obligation due the State thus began on January 8, 1993.

The State contends that the trial court erroneously exercised its discretion by refusing to order Jason to pay to the State 17% of his income retroactive to the date of Cheyenne's birth. The State argues that it is entitled to reimbursement of AFDC payments to Tammy during that time because (1) equitable credit is not available in a paternity action in which the State seeks reimbursement of AFDC payments made prior to adjudication; (2) allowing Jason "to have had the benefit of [the AFDC payments] that the child was not entitled to [had Jason been adjudicated the father at that time] and not have to pay the State arrears" would be inequitable and (3) not requiring reimbursement of the AFDC payments from the date of Cheyenne's birth to the date of the paternity adjudication is against public policy and would result in abuse of the welfare system.

We defer to the trial court's determination of historical facts after the evidentiary presentation and will set the court's findings aside only if they are clearly erroneous. Section 805.17(2), STATS. Sufficient, uncontroverted evidence exists to support the trial court's findings that Jason earned $2,100 in monthly gross income and spent almost all but $60 of that income on household expenses for the family unit and that Tammy received $77 per month in AFDC as a result of Cheyenne's birth. Therefore, we conclude that these findings are not clearly erroneous.

Whether credit for actual support is available in a paternity action in which the court is entering an original child support order under § 767.51(4) and (5), STATS., and in which the State seeks reimbursement of AFDC payments is a question of law. We review ques-

872

tions of law independently of the trial court's determination. *Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The State argues that credit is not available in a paternity action in which the State seeks reimbursement of AFDC payments made prior to adjudication. We conclude that the court has discretion to credit the putative father for support actually furnished prior to adjudication. Section 767.51(4) and (5), STATS., specifically commits to the trial court's discretion the amount, timing and method of calculating child support payments. Subsection (4) provides in part, "Support judgments or orders ordinarily shall be for periodic payments which may vary in amount if appropriate. The payment amount may be expressed as a percentage of the parent's income or as a fixed sum." Subsection (5) grants the trial court discretion in setting child support in a paternity action and authorizes the trial court to deviate from the percentage standards set forth in § 46.25(9)(a), STATS., "if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair . . . ." Additionally, the State cites no law, and we can find none, that precludes the court from granting Jason credit for support actually furnished prior to adjudication or requiring the court to order Jason to pay to the State 17% of his income despite his actual contributions to Cheyenne's support.

The dissent asserts that trial courts are precluded from allowing credit unless the person seeking the credit proves that a manifest injustice would result if the credit were not allowed, citing *Schulz v. Ystad*, 155 Wis. 2d 574, 604, 456 N.W.2d 312, 323 (1990). *Schulz* involved a noncustodial parent who, rather than pay-

873

ing child support as ordered in the divorce judgment, made direct expenditures for the child's benefit that the parent was not ordered to make. Because the noncustodial parent did not pay child support to the clerk of court as ordered, the noncustodial parent violated the order and an arrearage accrued. The parent sought credit against the arrearage for the direct expenditures actually made. In contrast, Jason did not substitute a different kind of payment for ordered child support payments but actually voluntarily supported Tammy and Cheyenne even though he had not been ordered to do so. We therefore conclude that *Schulz* is inapposite.

Even were the court precluded from allowing Jason credit unless a manifest injustice would result if the credit were not allowed, here the court would not be precluded from allowing Jason a credit. The court concluded that, because Jason supported Tammy and Cheyenne while they lived together as a family, requiring Jason to again pay to the State 17% of his income during that period would be unfair. The court found that Jason earned approximately $2,100 per month gross income during this period, that, except for a $15 per week contribution to his 401K, Jason expended all of his net income on household expenses and that Tammy's AFDC grant increased approximately $77 per month due to Cheyenne's birth. Thus, the court found that Jason expended at least, and most likely more than, 17% of his gross income for Tammy and Cheyenne's support. The difference between the monthly AFDC paid due to Cheyenne's birth and 17% of Jason's gross monthly income is $280 [$2,100 × .17 = $357 - $77 = $280]—almost four times the monthly amount of AFDC paid as a result of Cheyenne's birth.

The dissent challenges the court's finding that requiring Jason to pay to the State 17% of his gross

income without regard to the contributions he already made to Tammy and Cheyenne's support would be an unjust result. Had Jason paid $357 per month cash to Tammy and Cheyenne or into an escrow account for their support, the dissent would probably agree that requiring Jason to again pay this amount to the State would be an unjust result. We see no difference between these facts and the facts before us that would deprive the court discretion to credit Jason for actually supporting Tammy and Cheyenne. The record supports the court's finding that it would be unfair to require Jason to pay support twice for the same time period and therefore meets the *Schulz* "manifest injustice" test.

■

Because § 767.51(4) and (5), STATS., specifically give trial courts discretion in setting original child support orders in paternity actions and we can find no law that precludes the court from granting a putative father credit for support actually furnished prior to adjudication, we conclude that credit is available in a paternity action in which the court is entering an original child support order under § 767.51(4) and (5). We also conclude that the *Schulz* "manifest injustice" test does not apply to the situation where a putative father voluntarily supports a child prior to adjudication, and that even if the test did apply, it has been met in this case.

■

We now turn to the question whether the court's grant of a credit was an erroneous exercise of discretion. We review the trial court's exercise of discretion deferentially and will sustain a discretionary decision that was based on the facts of record and applicable law, and was the product of a rational mental process.

*Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20-21 (1981).

The State correctly asserts that § 49.19(4)(h)1.b, STATS., provides in part that

> when any person applies for or receives aid under this section, any right of the parent or any dependent child to support or maintenance from any other person, including any right to unpaid amounts accrued at the time of application and any right to amounts accruing during the time aid is paid under this section, is assigned to the state.

The State then notes that Cheyenne was entitled to support from Jason, once he was adjudicated her father, as of the date of her birth under § 767.51(4), STATS. The State concludes that because Cheyenne was entitled to 17% of Jason's gross income for support under § 767.50(4m), and this right to support was assigned to the State, the trial court erroneously exercised its discretion by not requiring 17% of Jason's gross income from the date of Cheyenne's birth to be paid to the State.

This argument ignores the court's power under § 767.51(5), STATS., to deviate from the percentage standards if, after considering several listed factors, the court finds that use of the percentage standard is unfair. One of the factors is the physical custody arrangement decided upon by the parents. Section 767.51(5)(gm). Here, the custody arrangement Tammy and Jason decided upon from three months prior to Cheyenne's birth to January 8, 1993, was that Tammy and Jason would live together as a family unit and would contribute their incomes toward Cheyenne's support. The court noted that Jason would be required

to pay 17% of his income as support under the percentage standards. The trial court credited him for this amount, because it concluded that to require Jason to pay 17% of his income during this time period, in addition to the support he already paid, would be unfair to Jason. We conclude that there was no erroneous exercise of discretion in these determinations.

Finally, the State argues that it would be inequitable not to require Jason to reimburse the State for AFDC payments it made to Cheyenne but for which she would have been ineligible had the State been allowed to consider Jason's income when determining Cheyenne's entitlement to AFDC. The State claims that Cheyenne's household was unjustly enriched by AFDC payments, and that "the only means available to the State for collecting those amounts of AFDC" is to order Jason to pay the State 17% of his gross income from the date of Cheyenne's birth until the date of the adjudication. The State did not allege or offer any evidence that Jason was aware that Tammy was receiving AFDC benefits for Cheyenne, that Jason participated in a scheme to obtain AFDC benefits to which Cheyenne and Tammy were not entitled or that Jason benefitted from the AFDC payments. Because the State neither alleged nor offered any evidence of Jason's participation in a scheme to obtain AFDC benefits to which Tammy and Cheyenne were not entitled, the question whether Jason was unjustly enriched is not properly before this court and we do not address it.

Moreover, as we stated in *State v. Halverson*, 162 Wis. 2d 453, 457, 470 N.W.2d 313, 315 (Ct. App. 1991), "Section[ ] 49.19(4)(h)1.b. . . . allow[s] the state to recover from the noncustodial parent child support assistance which the state has paid . . . because the

noncustodial parent is not paying his or her appropriate child support." Here, the state paid AFDC, not because Jason failed to support Cheyenne, but because § 49.19(5)(a), STATS., does not allow the State to consider Jason's income prior to his adjudication as Cheyenne's father when determining AFDC eligibility. Under these circumstances, we conclude it would be inequitable to require Jason to again pay to the State 17% of his income for the time period during which he furnished support to Tammy and Cheyenne.

The State further argues that the court's failure to order Jason to pay the State 17% of his income during this period of time violates public policy. Apparently, the State claims that it is entitled to payment regardless of whether the putative father discharged his child support obligation during the period of time from the date of the child's birth to the date of the adjudication. The State argues that not ordering reimbursement under these circumstances would lead to widespread abuse of the welfare system. We do not agree that public policy requires reimbursement by the putative father under the facts of this case. We note that if putative fathers who voluntarily pay child support prior to an adjudication of paternity are unable to have these contributions legally recognized and credited, putative fathers would be discouraged from voluntarily contributing to the child's support. If Tammy received AFDC payments to which she was not entitled because of her failure to disclose Jason's voluntary contributions to Tammy and Cheyenne's support, recourse is more appropriately obtained by holding Tammy responsible for these actions. Seeking either criminal sanctions or reimbursement against her rather than requiring double support payments from Jason is more

consistent with the public policy concerns the State identified.

Based upon the facts that Jason voluntarily contributed to Cheyenne's support as a custodial parent during the time period from Cheyenne's birth to the adjudication of paternity, we find no error in the court's decision not to require Jason to make further support payments during that period of time.

*By the Court.*—Order affirmed.

CANE, P.J. (*dissenting*). I conclude that the State should be awarded reimbursement for the aid it paid for the child. Here, there is no dispute that the mother in her seventh month of pregnancy began receiving AFDC for this child. As a condition of receiving AFDC, she assigned her right to support to the State which seeks reimbursement for the aid it paid. The majority reasons that because the father actually furnished support while living with the mother and child, the State is not as a matter of discretion entitled to reimbursement for its furnished aid. I disagree.

Section 49.19(4)(h)1.b, STATS., provides that when any person applies for or receives aid under this section, any right of the parent or of any dependent child to support or maintenance from any person, and any right to amounts accruing during the time that aid is paid under this section, *is assigned to the State.* Additionally, § 767.075(1), STATS., provides that the State is the real party in interest for purposes of establishing paternity, securing reimbursement of aid paid, future support and costs.

By virtue of these statutes, the legislature has assigned to the State the mother and child's right to support or reimbursement of aid paid. Consequently,

the right to that support no longer belongs to the mother or child, but rather to the State as reimbursement for the aid it provided.

Here, the trial court credited the father's support paid to the mother and child against the father's obligation to reimburse the State for the aid it paid. Even though it arguably may seem inequitable to have the father pay support twice, it is also inequitable for the State to lose reimbursement for the aid it paid because the father voluntarily contributed support to the mother. In *Schulz v. Ystad,* 155 Wis. 2d 574, 604, 456 N.W.2d 312, 323 (1990), the supreme court set forth the general rule that the trial court may allow credit against support arrearages, but cautioned the courts to exercise this discretion only in those situations where a manifest injustice would result if credit were not allowed.

I see no manifest injustice in this case by requiring the father to reimburse the State for the aid it paid for his child. The father lived with the mother and child and the State's aid was used to help support his child. Merely because he contributed support for his child does not mean that he should not be required to reimburse the State for the aid it also furnished for the child's support. Because there is no manifest injustice if credit were not allowed, the trial court had no discretion to allow this credit. Although the State seeks 17% of the father's income, the trial court may properly limit the State's recovery to the amount it paid, namely the $77 monthly payments and any other costs it incurred for the child.