**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP1909-CR**
**2018AP1910-CR**
**2018AP1911-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2014CF2788**
**2014CF5001**
**2015CF1839**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ANTHONY KWAAME IT,

      DEFENDANT-APPELLANT.

      APPEALS from judgments and an order of the circuit court for Milwaukee County:  DENNIS P. MORONEY and JOSEPH R. WALL, Judges. *Affirmed*.

      Before Brash, P.J., Kessler and Dugan, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Anthony Kwaame It, *pro se*, appeals from judgments, entered upon his guilty pleas, convicting him of four different offenses in three cases. He also appeals from the denial of his postconviction motion, in which It argued that he should be allowed to withdraw his guilty pleas because he received ineffective assistance of trial counsel and because the plea colloquy was defective. We reject It's arguments and affirm the judgments and order.

## BACKGROUND

### A. Charge History

¶2 On February 12, 2014, then twenty-year-old It entered a gas station, approached the register, and asked to buy a cigar. The clerk requested identification to verify his date of birth. It produced his Wisconsin identification card, and the clerk entered his birthdate into the register. As the clerk opened the drawer to process the transaction, It said, "Give me all that." The clerk looked and saw that It had a gun. The clerk gave him the money from the till—about $101— and It fled. Using surveillance video and the date of birth provided, police identified It as a suspect. Another clerk who witnessed the robbery identified It from a photo array. In June 2014, It was charged with one count of armed robbery with the threat of force. In October 2014, It was released from custody after posting $3000 bond.

¶3 While on bond, It incurred new charges. Shortly after 1:00 a.m. on November 6, 2014, police officer C.F. from the Village of Bayside was preparing to park his marked SUV and begin foot patrol when a subject, whom C.F. recognized from prior contacts as It, ran towards the SUV and jumped on the hood. C.F. got out of the vehicle and ordered It to the ground; It refused to

2

comply, positioning himself in a fighting stance while telling C.F. to "taser him" and screaming obscenities. Backup arrived, including officers from surrounding jurisdictions. It continued to refuse commands, so officers attempted to restrain him. After It was subdued, one of the backup officers was limping; he had fresh abrasions on his knee, as well as cuts on two fingers. C.F. transported It to the Milwaukee County Mental Health Complex. While waiting in the squad to be admitted, It was agitated and erratic. When C.F. declined to adjust It's handcuffs, It leaned through the open partition and spat at C.F.'s face. It was charged with misdemeanor disorderly conduct, resisting an officer causing soft tissue injury, throwing or discharging bodily fluids at a public safety worker, and felony bail jumping. It was returned to custody.

¶4 On April 20, 2015, It, still in custody, was utilizing his recreational time when he began singing and pounding on a glass divider between himself and staff. A corrections officer told him to return to his cell because recreation time was over. It ignored her and continued to be disruptive. Three officers attempted to take It to his cell. During this attempt, It spat twice into one officer's face. It was charged with one count of assault by a prisoner by expelling bodily fluids.

*B. Procedural History*

¶5 It's attorneys raised competency concerns in each of his cases. In the first case, It was committed in July 2014 for inpatient treatment to restore competency. It was deemed competent to proceed in October 2014, after which he posted bond. When It was charged in the second case, counsel again raised competency. It was deemed competent, but defense counsel asked that It be evaluated for a plea of not guilty by reason of mental disease or defect (NGI). That evaluation request was approved in December 2014.

3

¶6    In January 2015, the examining psychiatrist requested additional time to complete his report.  He had attempted to meet with It at the Criminal Justice Facility, but It was reportedly extremely agitated and had allegedly "popped a sprinkler" and flooded a cell, halting inmate movement.  Based on the allegations in the extension request, trial counsel re-raised It's competency, and another competency evaluation was ordered.  The examiner filed a dual-purpose report in February 2015, diagnosing It with schizoaffective disorder and personality disorder with antisocial tendencies, but concluding that It was not suffering symptoms of these disorders at the time of his offenses.  This meant that It would have been able to appreciate the wrongfulness of his conduct, making an NGI plea untenable.  The examiner also concluded that It was competent to proceed.  When It incurred the charges in the third case, trial counsel again raised competence.  It was deemed competent shortly thereafter.

¶7    The cases proceeded to a joint plea hearing in June 2015.  In exchange for It's guilty pleas, the State would dismiss and read in the misdemeanor disorderly conduct and the felony bail jumping charges while standing silent on the length of any prison term.  For each case, It signed an addendum to the plea questionnaire and waiver of rights form in which he acknowledged he was giving up "any defenses such as insanity" with his pleas.  The trial court[1] reviewed the maximum penalties for each charge with It, who acknowledged his understanding of the possible sentence for each charge.  During a review of the constitutional rights It would be waiving with his pleas, the trial

---

[1] The Honorable Dennis P. Moroney conducted the plea colloquy and imposed sentence. We refer to him as the trial court in this opinion.

4

court emphasized to It that the "defense as to insanity would be gone." It indicated that he understood he was waiving that defense.

¶8 At sentencing a few weeks later, the trial court imposed four years of initial confinement and four years of extended supervision for the armed robbery; one year of initial confinement and one year of extended supervision each for the resisting causing injury and discharging bodily fluids offenses, concurrent with each other, but consecutive to the robbery sentence; and one year of initial confinement and one year of extended supervision for the assault by a prisoner, consecutive to the other two sentences. The total sentence was six years of initial confinement and six years of extended supervision.

¶9 On August 3, 2016, It, by his postconviction counsel, moved to withdraw his pleas on the grounds that the trial court had failed to advise It that he would be subjected to multiple DNA surcharges. The circuit court[2] held the motion in abeyance while the court of appeals considered similar arguments in *State v. Odom*, appeal No. 2015AP2525-CR, and *State v. Freiboth*, appeal No. 2015AP2535-CR.[3] While the motion was on hold, postconviction counsel moved to withdraw. After giving It appropriate warnings and receiving an

---

[2] The Honorable Thomas J. McAdams reviewed It's postconviction motions and denied most of the claims therein. We refer to him as the circuit court in this opinion.

[3] *State v. Odom*, appeal No. 2015AP2525-CR, had been twice certified to the supreme court. The second certification was granted, but Odom voluntarily dismissed the appeal in February 2018, after briefing but before oral argument. This court decided *Freiboth* in July 2018, holding that "plea hearing courts do not have a duty to inform defendants about the mandatory DNA surcharge, because the surcharge is not punishment and therefore not a direct consequence of a plea." *See State v. Freiboth*, 2018 WI App 46, ¶12, 383 Wis. 2d 733, 916 N.W.2d 643.

5

adequate response from It, the circuit court discharged postconviction counsel from the cases.

¶10 This court granted It an extension of time for filing a postconviction motion or notice of appeal through June 16, 2017. In May 2017, It filed a postconviction motion in which he alleged that the plea colloquy was defective and that he was denied the effective assistance of trial counsel. It claimed that the colloquy was defective because the trial court "did not notify the defendant that multiple DNA surcharges would be imposed" and because the trial court "did not inquire whether the defendant had knowledge of the presumptive minimum sentence." It further alleged that trial counsel had been ineffective because counsel: (1) failed to advise It "that incriminating testimony given at psychological evaluations was inadmissible at trial" and, if It had been so advised, he would not have pled; (2) never gave It an assessment of his case; (3) failed to present mitigating evidence, such as evidence of It's abusive childhood, from the psychological reports at sentencing; (4) failed to warn It "that he may be sentenced under sentencing guidelines"; (5) refused to negotiate a better plea deal; and (6) did not inform It that he could refuse the plea offer.

¶11 The circuit court held the surcharge issue in abeyance, but denied the rest of It's motion, concluding as follows. The presumptive minimum sentence issue was "patently frivolous, because the offenses for which [It] was convicted in these cases do not carry a presumptive minimum sentence." It had not identified which "incriminating testimony" was at issue, shown that trial counsel was obligated to advise him on the admissibility of those statements, or offered any facts "to support his conclusory and self-serving assertion that he would have" rejected the plea deal and gone to trial. Assuming trial counsel had been deficient

for not offering his assessment of the case, It had not shown how that deficiency affected his desire to plead. It had not been prejudiced by trial counsel's failure to present mitigating evidence from the psychological reports because the trial court had previously reviewed the reports. Trial counsel's failure to warn It about sentencing guidelines did not matter because sentencing guidelines were not used. It could only speculate that trial counsel could have negotiated a better plea deal, but speculation is insufficient to support a postconviction motion. Finally, It's answers during the plea colloquy, acknowledging waiver of his right to a trial, included an implicit understanding that he had the right to reject the plea and go to trial instead. Anything else alleged in the motion was "completely self-serving and insufficient."

¶12 On June 14, 2017, It filed an "amended" motion to withdraw his guilty pleas and a "continued" motion, asserting the motions were proper because the filing deadline set by this court was June 16. The express purpose of the amended motion was "to correct the deficiencies of the last motion [It] filed." In this motion, It identified specific incriminating statements from his psychological examinations. He also complained that trial counsel failed to explain that, if he entered an NGI plea, then "a jury was to decide the criminal responsibility portion of the trial." It claims that if trial counsel had properly explained the NGI process, "he would have plead [sic] NGI coupled with a plea of not guilty." In the continued motion, It complained that the plea colloquy was defective because the trial court "failed to inform [It] of consecutive sentences."

7

¶13    The circuit court, noting that WIS. STAT. § 974.06 (2017-18)[4] "requires a defendant to raise all grounds for postconviction relief in his original motion" or face the procedural bar of *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), treated It's amended motion as a motion for reconsideration of its earlier denial order.[5]  The circuit court determined that this reconsideration motion was "rife with conclusory and unsupported allegations, and … sets forth nothing that persuades the court to alter its prior decision." Regarding the plea colloquy issue from the continued motion, the circuit court noted that It "has not demonstrated that the [trial] court has a duty … to advise a defendant during a plea colloquy of its authority … to impose consecutive sentences."  Thus, the circuit court denied both motions.  After this court decided *Freiboth*, the DNA surcharge claim was also denied.[6]  It appeals.

## DISCUSSION

### A.  Standards of Review

¶14    A defendant seeking to withdraw a guilty plea after sentencing "must prove by clear and convincing evidence that withdrawal is necessary to

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[5] The circuit court also correctly noted that this court's order extending It's filing deadline did not grant It permission to file multiple postconviction motions.

[6] The Honorable Joseph R. Wall entered the order denying the remaining DNA surcharge claim, which was the order from which It could take his appeal as of right.  *See* WIS. STAT. RULE 809.30(2)(j).  It does not specifically challenge Judge Wall's order, though, nor does he directly challenge his judgments of conviction.  Rather, his appeal focuses on Judge McAdams' nonfinal orders.  *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings … not previously appealed and ruled upon.").

correct a manifest injustice." *State v. Villegas*, 2018 WI App 9, ¶18, 380 Wis. 2d 246, 908 N.W.2d 198. A plea that is not knowingly, intelligently, and voluntarily entered constitutes a manifest injustice. *See State v. Sulla*, 2016 WI 46, ¶24, 369 Wis. 2d 225, 880 N.W.2d 659. One route for challenging such a plea is a claim that the plea is infirm under *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), "based upon 'some factor extrinsic to the plea colloquy'—like ineffective assistance of counsel." *See Villegas*, 380 Wis. 2d 246, ¶19 (citation omitted). Another route is to allege an unknowing plea based on a defect in the plea colloquy. *See id.*, ¶20; *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986).

¶15     A *Bentley* postconviction motion must allege "sufficient material facts that, if true, would entitle the defendant to relief." *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "[T]he facts supporting plea withdrawal must be alleged in the [motion] and the defendant cannot rely on conclusory allegations, hoping to supplement them at a hearing." *Bentley*, 201 Wis. 2d at 313. If the motion fails to allege sufficient material facts or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, then the circuit court has the discretion to grant or deny a hearing. *See Allen*, 274 Wis. 2d 568, ¶9. We review a circuit court's discretionary decisions for an erroneous exercise of that discretion. *See Bentley*, 201 Wis. 2d at 311.

¶16     A *Bangert* motion "requires the defendant to make a prima facie case that the plea colloquy failed to comply with [WIS. STAT. § 971.08] or other mandatory procedures." *See Villegas*, 380 Wis. 2d 246, ¶20. The defendant must also "allege that he did not know or understand the information that should have

9

been presented at the plea hearing." *State v. Negrete*, 2012 WI 92, ¶30, 343 Wis. 2d 1, 819 N.W.2d 749. If the defendant makes these threshold showings, the burden shifts to the State to prove by clear and convincing evidence that the plea was nevertheless knowing, intelligent, and voluntary. *See id.*; *Villegas*, 380 Wis. 2d 246, ¶20.

## B. The *Bentley* Allegations

¶17 It first challenges his pleas by alleging multiple instances of ineffective assistance of trial counsel. To demonstrate ineffective assistance of trial counsel, It must show that trial counsel performed deficiently and that this deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Villegas*, 380 Wis. 2d 246, ¶23. Deficient performance occurs when the attorney's errors are so serious that he or she was not functioning as the "counsel" guaranteed by the constitution. *See Villegas*, 380 Wis. 2d 246, ¶24. To demonstrate prejudice, It must show a reasonable probability that, but for trial counsel's deficiency, the result of the guilty plea would have been different. *See id.* However, It "must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions … that allow the reviewing court to meaningfully assess [the] claim." *See Bentley*, 201 Wis. 2d at 313-14.

¶18 On appeal, It does not discuss all of the ineffective assistance claims he raised in his postconviction motions,[7] nor does he discuss any of the circuit

---

[7] Arguments made in the circuit court but not re-raised on appeal are deemed abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

court's reasons for denying relief. He argues only that trial counsel was ineffective because he failed to: (1) inform It that with an NGI plea, "he could plead guilty and still have the option to go to trial on criminal responsibility"; (2) explain the State's burden of proof to It; and (3) inform It "that testimony given at a psychological evaluation was inadmissible at trial." It claims that absent these mistakes by counsel, he "would have pled not guilty coupled with the NGI and proceed[ed] to trial." These claims are either conclusory or defeated by the record.

1. Trial on "Criminal Responsibility"

¶19     When a defendant "couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect," the issues are bifurcated into a guilt phase and a responsibility phase, with guilt determined first. *See* WIS. STAT. § 971.165(1)(a); ***State v. Magett***, 2014 WI 67, ¶33, 355 Wis. 2d 617, 850 N.W.2d 42. In the responsibility phase, the jury considers whether the defendant had a mental disease or defect at the time of the crime and whether, as a result of that issue, the defendant "lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." *See* WIS. STAT. § 971.15(1); ***Magett***, 355 Wis. 2d 617, ¶33.

¶20     It never explains why, had trial counsel advised him of the bifurcated trial procedure, he would have rejected the offer requiring his guilty plea to four counts and instead would have gone to trial on six counts.[8] Though It contends he did not know a "sep[a]rate criminal responsibility jury trial was an

_____

[8] This omission is particularly problematic as It expressly acknowledged to the trial court during the plea colloquy that he was giving up the insanity defense.

11

option that he could use to help him," he does not explain how he anticipates a separate trial on responsibility would benefit him. Further, in a bifurcated NGI trial, the defendant, not the State, bears the burden of establishing a mental disease or defect "to a reasonable certainty by the greater weight of the credible evidence," *see* WIS. STAT. § 971.15(3), but the only evidence currently of record is the psychiatric opinion that an NGI plea is not supported.[9]

### 2. State's Burden of Proof

¶21 It complains that trial counsel failed to inform him that the State has the burden to prove charges beyond a reasonable doubt. This argument appears to be raised for the first time on appeal, so we could disregard it. *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997). Nevertheless, we note that, even if trial counsel was deficient for not informing It of the State's burden of proof, this failure was not prejudicial because the trial court informed It of the State's burden. During the plea colloquy, the trial court informed It that the State "must be in a position to prove up each respective count beyond a reasonable doubt." When reviewing the elements of each offense, the trial court asked It each time if he understood the elements that the State would have to prove "beyond a reasonable doubt." It acknowledged his understanding of the elements for each charge. Later in the colloquy, the trial court asked It whether he understood that he was giving up the right to make the State prove each count "and the elements

---

[9] Relatedly, It argues that trial counsel refused to obtain an expert in support of an NGI plea. This issues appears to have been raised for the first time on appeal, so we could decline to consider it. *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997). We note, however, that It has not identified any potential experts with supportive opinions, and trial counsel is not required to seek repetitive exams of a defendant until an expert with a favorable opinion is found. *See State v. Oswald*, 2000 WI App 2, ¶77, 232 Wis. 2d 62, 606 N.W.2d 207.

therein beyond a reasonable doubt." It acknowledged this waiver, too. In addition, It has not developed any argument showing why his plea would have been different if trial counsel had explained the State's burden to him.

### 3. Inadmissibility of "Testimony" from Psychiatric Examinations

¶22 It's final appellate claim of ineffective assistance is that trial counsel did not explain that his "psychological testimony was inadmissible." He asserts that had he known this, he would have "insisted on a 2 part trial not guilty coupled with NGI."

¶23 A statement made by a person subjected to psychiatric examination under WIS. STAT. ch. 971 for the purposes of that examination "shall not be admissible in evidence against the person in any criminal proceeding on any issue other than that of the person's mental condition." *See* WIS. STAT. § 971.18. Thus, certain statements It made during his examinations, such as his admission that he was given the money in the robbery and then ran off and his comment that "[i]t wasn't a loogey" when he spit on C.F., would not have been admissible at a trial or during the guilt phase of a bifurcated trial.

¶24 It raised the admissibility issue in his amended motion, which the circuit court treated as a motion for reconsideration, and concluded that reconsideration was not warranted. On appeal, It develops no argument to show

13

how the circuit court erred in denying reconsideration.[10] *See* ***State v. Alonzo R.***, 230 Wis. 2d 17, 21, 601 N.W.2d 328 (Ct. App. 1999) (court of appeals reviews circuit court decision on reconsideration using the erroneous exercise of discretion standard). It also fails to adequately explain why he would have rejected the plea and gone to trial. Although It did not believe that the State could prove he committed the robbery or spit on the two officers, he does not explain why he believes the State—which had available to it a surveillance video, It's birthdate, and a positive identification from a photo array for the robbery, plus officer testimony regarding the spitting—would have had difficulty proving any of those offenses without It's admissions from his evaluations.

¶25    Based on the foregoing, It has not established that the circuit court erroneously exercised its discretion in denying his postconviction ***Bentley*** motion for plea withdrawal or his "reconsideration" motion. It's claims of ineffective assistance of trial counsel are conclusory or defeated by the record.

## C. The ***Bangert*** Claim

¶26    It also claims that he should be allowed to withdraw his pleas based on an allegedly defective plea colloquy. Specifically, It contends that the trial court should have informed him of the possibility of consecutive sentences.

---

[10] In his brief, It asks us to review his arguments "only in its pleading without comparing it to his postconviction motions which were pled improperly" and asserts that he "should be allowed to plead in this brief any issues that he failed to plea[d] or pled improperly in the postconviction motion." However, our review is generally limited to the allegations within the four corners of the postconviction motion, not any additional allegations in an appellate brief. *See* ***State v. Allen***, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433. In any event, the issues raised in It's appellate briefs are also inadequately pled.

¶27 It fails to establish that a trial court has a mandatory duty to advise a defendant that consecutive sentences can be imposed. *See **Bangert***, 131 Wis. 2d at 274. While our supreme court has said "the better practice" is to inform a defendant of the cumulative maximum sentence possible from consecutive sentences on multiple charges, *see **State v. Brown***, 2006 WI 100, ¶78, 293 Wis. 2d 594, 716 N.W.2d 906, that court has not made such information a required part of a plea colloquy. Moreover, even if there were an error in the trial court's failure to inform It of the cumulative maximum sentence that could be imposed with consecutive sentences, such omission would be harmless in this case. *See **id.*** It acknowledged the maximum possible sentence for each separate charge, and It's total sentence of twelve years' imprisonment is far below the forty years' imprisonment he faced for the armed robbery alone. Accordingly, It has not established a valid basis for plea withdrawal under ***Bangert***, either.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15