COURT OF APPEALS
DECISION
DATED AND FILED

September 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1565**

STATE OF WISCONSIN

Cir. Ct. No. 2021FA272

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE MARRIAGE OF:

TEAHANNA ESTELLE OLSON,

    PETITIONER-APPELLANT,

  V.

CHARLES CURTIS OLSON,

    RESPONDENT-RESPONDENT.

---

APPEAL from a judgment and an order of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Reversed and cause remanded with directions.*

Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Teahanna Estelle Olson appeals a judgment of divorce and a separate order denying her request for past child support from Charles Curtis Olson.[1]   Teahanna argues that the circuit court erroneously exercised its discretion in four respects:   (1) ordering joint legal custody of the parties' minor child; (2) ordering shared physical placement of the child; (3) denying Teahanna's request for past child support; and (4) determining that the house in which the parties lived during their marriage is not subject to division at divorce.

¶2     We agree with Teahanna that the circuit court erroneously exercised its discretion with respect to its determinations as to legal custody, physical placement, past child support, and property division.   In all of these determinations, the court failed to apply the correct legal standard to the relevant facts.   Accordingly, we reverse these portions of the court's judgment and order and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3     There are no disputes as to the following material facts, except as otherwise indicated.

¶4     Teahanna and Charles were married in October 2014.   They have one minor child ("the child"), who was born in October 2015.

¶5     In 2013, prior to their marriage, Charles purchased a house. Teahanna and her two children from a prior marriage moved into this house with

---

[1] Because Teahanna and Charles share the same last name, we will refer to them by their first names throughout the remainder of this opinion.

Charles. The family, with the addition of the marital child after his birth in 2015, resided in this house until Teahanna moved out with the three children in July 2021 prior to the commencement of this action. Charles's grandmother gifted him $2,600 for the purchase of the house. As to payment of the monthly mortgage on the house, Teahanna testified at the divorce trial that she regularly gave money to Charles to help pay for the monthly mortgage, and Charles testified that he made the monthly mortgage payments exclusively using money gifted from his grandmother.

¶6    Teahanna filed this divorce action in September 2021. After fourteen unsuccessful attempts by several different process servers to personally serve Charles with the divorce action, Teahanna eventually served Charles by publication. Charles later admitted that he learned about the filing of the divorce action when he looked it up on the circuit court's website "a few days after" it was filed.

¶7    In November 2021, Teahanna filed a petition for a domestic abuse injunction against Charles. Teahanna's petition alleged that, around the time that she filed the divorce action in September 2021, a police officer accompanied her to pick up some property at the house she had shared with Charles. Teahanna alleged that Charles expressed anger during this visit and put one hand around her throat in an attempt to "choke" her. According to the injunction petition, the officer told Charles to stop, but Charles refused and said that Teahanna "likes being choked." The officer again commanded that Charles stop, and Charles complied. Teahanna's petition also alleged that, on multiple occasions in September and October 2021, Charles "engaged in a serious and threatening pattern of stalking," which included showing up uninvited at her residence and

3

workplace and leaving in her vehicle handwritten notes that included threats to commit suicide.

¶8      Charles was served with the injunction petition by publication after multiple unsuccessful attempts at personal service.  Charles did not appear at the hearing on the petition or otherwise respond to the petition.  The court commissioner granted the petition and prohibited Charles from contacting Teahanna, appearing at Teahanna's residence or workplace, or committing acts of domestic abuse against Teahanna.  The injunction remains in effect until December 2025.

¶9      In April 2022, Teahanna moved for default judgment against Charles in the divorce action, alleging that Charles had not responded or otherwise participated.  In May 2022, Charles retained counsel and began participating in the divorce action.  A guardian ad litem was appointed for the child, and the circuit court scheduled a trial for May 2023.

¶10     At no point during the pendency of the divorce action did the circuit court enter any temporary orders pursuant to WIS. STAT. § 767.225(1) (2021-22) regarding legal custody, physical placement, or child support.[2]  Teahanna moved for a temporary order to address legal custody, physical placement, child support and other temporary issues when she filed the divorce action in September 2021, and again in October, November, and December, 2021.  Each hearing on her

---

[2] WISCONSIN STAT. § 767.225(1) allows the circuit court to make "just and reasonable temporary orders" during the pendency of "an action affecting the family," including temporary orders regarding legal custody, physical placement, child support, and communication between the parties.  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

motions was adjourned because of lack of service of the divorce action on Charles. For his part, Charles never requested a temporary order.

¶11 At trial, Teahanna requested sole legal custody and primary physical placement of the child with periods of supervised placement for Charles, while Charles requested joint legal custody and shared physical placement. Teahanna also requested that Charles be ordered to pay future and past child support, retroactive to the date on which Teahanna filed the petition for divorce. Teahanna also requested that the equity in the house be divided between the parties, with Teahanna receiving 52% of the equity and Charles receiving 48% of the equity, because of Charles's admitted destruction of Teahanna's personal property that remained at the house. Charles opposed both requests, asserting that no past child support was warranted because Teahanna allegedly withheld the child from him and that the house was his individual property. The guardian ad litem recommended that the court award joint legal custody to the parties, with primary physical placement to Teahanna and periods of physical placement with Charles on an every-other-week basis.

¶12 In the circuit court's oral decision a few weeks later, the court ordered joint legal custody of the child, with equal periods of physical placement to each parent. The court also determined that the house the parties shared during their marriage is not subject to division, concluding that the house was purchased as Charles's individual property and never became marital property. In a later order, after further briefing, the court denied Teahanna's request for child support for the period in which the divorce action was pending. The court took the position that the domestic abuse injunction that Teahanna obtained against Charles was designed to deprive Charles of legal custody and physical placement of the

5

parties' child during the period that Teahanna attempted to collect child support from him. Teahanna appeals.

## DISCUSSION

¶13 On appeal, Teahanna argues that the circuit court erroneously exercised its discretion in four respects: (1) the court applied an incorrect legal standard when ordering joint legal custody; (2) the court applied an incorrect legal standard when ordering shared physical placement; (3) the court made erroneous factual findings and applied an incorrect legal standard when it considered the domestic abuse injunction that Teahanna obtained in denying Teahanna's request for past child support; and (4) the court failed to apply a correct legal standard when it determined that the house was Charles's individual property and is nondivisible without conducting the legally required inquiries.

### I. Standard of Review

¶14 A circuit court's decisions regarding legal custody, physical placement, past child support, and division of divisible property are discretionary. *Valadez v. Valadez*, 2022 WI App 2, ¶12, 400 Wis. 2d 523, 969 N.W.2d 770 (2021) (custody and placement); *Lyman v. Lyman*, 2011 WI App 24, ¶12, 331 Wis. 2d 650, 795 N.W.2d 475 (child support); *Wright v. Wright*, 2008 WI App 21, ¶9, 307 Wis. 2d 156, 747 N.W.2d 690 (2007) (division of divisible property). We will sustain discretionary decisions if the circuit court "examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Valadez*, 400 Wis. 2d 523, ¶12.

¶15    In making a discretionary decision, the circuit court may need to decide legal issues or make factual determinations. *Wright*, 307 Wis. 2d 156, ¶9. We independently review any issues of law, but we defer to the court's findings of fact and credibility determinations. *Id.* "If there is credible evidence to support the trial court's determination, we will not overturn it based on testimony in the record that conflicts with the testimony upon which the trial court relied." *Id.*, ¶21. However, we may set aside the court's findings of fact if they are clearly erroneous. *Id.*, ¶9 (citing WIS. STAT. § 805.17(2)). A finding of fact is clearly erroneous when "it is against the great weight and clear preponderance of the evidence." *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784.

¶16    A circuit court erroneously exercises its discretion when it applies an incorrect standard of law. *LeMere v. LeMere*, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789. This court will conclude that a circuit court applied an incorrect legal standard if the circuit court failed to consider statutorily required and factually applicable factors when making its decision. *Id.*, ¶25. However, "a circuit court's failure to address factually inapplicable statutory factors will not be an erroneous exercise of discretion." *Id.*, ¶26.

¶17    A circuit court's exercise of discretion is also erroneous if it is not reasonable. *Goberville v. Goberville*, 2005 WI App 58, ¶7, 280 Wis. 2d 405, 694 N.W.2d 503. "For an exercise of discretion to be reasonable, the court need not exhaustively analyze each piece of evidence, but it must articulate its findings and reasoning." *Id.* Indeed, the term "discretion" connotes a "process of reasoning that depends on facts in the record or reasonably derived by inference from the record." *Id.* If necessary, we may look to the record for reasons to sustain the circuit court's exercise of discretion. *Id.*

## II. Legal Custody

¶18    Teahanna argues that the circuit court erroneously exercised its discretion when ordering joint legal custody of the child.  We agree, based on our conclusion that the court applied an incorrect standard of law because it failed to consider a presumption against joint legal custody that could apply here.

¶19    Legal custody of a minor child in a divorce action is governed by WIS. STAT. § 767.41(2).  When determining legal custody, the court must ordinarily presume that joint legal custody is in the best interest of the child.  Sec. 767.41(2)(am).  However, this presumption does not apply in certain circumstances.  For instance, the presumption does not apply "if the court finds by a preponderance of the evidence that a party has engaged in a pattern or serious incident of … domestic abuse."  Sec. 767.41(2)(d)1.  If the court makes this finding, then "there is a rebuttable presumption that it is detrimental to the child and contrary to the best interest of the child to award joint or sole legal custody to that party."  Sec. 767.41(2)(d)1.[3]

¶20    In her circuit court briefing, Teahanna asked the court to make a finding that Charles had engaged in a pattern or serious incident of interspousal battery or domestic abuse pursuant to WIS. STAT. § 767.41(2)(d)1.  This request was based on the allegations in Teahanna's domestic abuse injunction petition and Teahanna's trial testimony that Charles had stalked her, left handwritten notes in

---

[3] In her circuit court briefing, Teahanna also asked the court to apply a separate rebuttable presumption against joint legal custody that is set forth under WIS. STAT. § 767.41(2)(b)2.c.  Because Teahanna does not mention this separate presumption on appeal, we deem that argument abandoned.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

her vehicle threatening to commit suicide, and attempted to "choke" her. During the divorce trial, Charles admitted to leaving the notes in her vehicle and putting one of his hands on Teahanna's throat without her consent in an attempt to mimic a strangling motion.

¶21 In its oral ruling awarding joint legal custody, the circuit court referred to Teahanna's domestic abuse injunction, but the court mentioned only one of the allegations of domestic abuse in Teahanna's injunction petition about which she testified during the divorce trial. The court said that it did not believe that the alleged attempted choking had occurred:

> [I]t is the petition itself which caused the Court great concern, because the allegations, which, as far as I can tell, she swore to under oath at the time of the hearing, include things that this Court finds, based on its experience, incredible.
>
> ….
>
> In all the years that I practiced as a district attorney and in the years I have sat on the bench, I know of no officer with a valid restraining order, temporary restraining order for these two parties who would allow [Charles] to choke [Teahanna] in his presence, tell him to stop, watch him continue to choke and then let him go into the house without arresting him at the very least for that behavior and referring it to the district attorney's office.…
>
> It is that incredible testimony, along with some of the statements and admissions that [Teahanna] made on the record that she had no reason to believe that [Charles] would not be a good dad, was not a good dad, she didn't appear to have any concerns that her son was at any risk by [Charles], that I do make the finding that there will be joint legal custody of this child.

¶22 On appeal, Teahanna argues that the circuit court erroneously exercised its discretion in ordering joint legal custody because it failed to consider

evidence of domestic abuse that could trigger the presumption against joint legal custody. For the following reasons, we agree.

¶23 First, the circuit court failed to consider relevant evidence of domestic abuse. "Domestic abuse" for the purposes of the presumption against joint legal custody is defined in WIS. STAT. § 813.12(1)(am). This statute provides, in relevant part, that "domestic abuse" includes "any of the following engaged in by an adult family member … against another adult family member": intentional infliction of physical pain, physical injury, or illness; intentional impairment of physical condition; and stalking. Sec. 813.12(1)(am). "Stalking" is further defined in WIS. STAT. § 940.32, and includes conduct such as: maintaining a visual or physical proximity to the victim; entering property owned, leased, or occupied by the victim; sending to the victim any physical or electronic material or contacting the victim by any means; and placing an object on or delivering an object to property owned, leased, or occupied by the victim. Sec. 940.32(1)(a).

¶24 As discussed above, putting aside the attempted choking allegation, Teahanna's domestic abuse injunction petition and her testimony at the divorce trial alleged that Charles had stalked her by showing up uninvited and unannounced at her residence and workplace and leaving handwritten notes in her vehicle, including notes in which he threatened to commit suicide. Charles admitted in his testimony during the divorce trial that, after they separated, he had sent her text messages and left notes in her vehicle at her workplace by unlocking her vehicle door with an extra key that he had retained. Charles does not dispute that this evidence of stalking constitutes "domestic abuse" for the purpose of the presumption against joint custody under WIS. STAT. § 767.41(2)(d)1. However, the circuit court's decision to award joint legal custody ignored this evidence of stalking and instead focused solely on the court's doubt about the credibility of the

attempted choking allegation. The court failed to address whether the allegations of Charles's stalking constitute a "pattern or serious incident of … domestic abuse" that could trigger the presumption against joint legal custody under § 767.41(2)(d)1.

¶25 In addition, instead of treating the injunction as evidence of domestic abuse, the circuit court questioned the factual basis of the allegations supporting the injunction. For example, the court discounted Teahanna's allegation that Charles had attempted to "choke" her, even though Charles admitted at trial to placing one hand on Teahanna's neck during the incident to simulate a strangling motion. The court failed to provide a supported, reasoned basis to question the findings and validity of a final, enforceable order for a domestic abuse injunction issued in a separate court action.

¶26 Further, Charles does not mention the presumption against joint legal custody in his response brief or otherwise argue that the circuit court properly considered evidence of domestic abuse in its custody decision. We construe this lack of response by Charles as a concession that the court erred. *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (1999) ("An argument to which no response is made may be deemed conceded for purposes of appeal.").

¶27 In sum, we conclude that the circuit court applied an incorrect standard of law when ordering joint legal custody by not considering uncontested evidence of domestic abuse and by discounting the validity of an enforceable domestic abuse injunction. Accordingly, we reverse and remand for the court to properly exercise its discretion consistent with this opinion.

### III. Physical Placement

¶28 Teahanna argues that the circuit court erroneously exercised its discretion in ordering shared physical placement of the child because the court applied an incorrect presumption of equal physical placement and failed to consider several relevant best interest of the child factors. For the following reasons, we agree that the court erred in these respects.

¶29 Physical placement of a minor child in a divorce action is governed by WIS. STAT. § 767.41(4). This statute provides that, "[i]n determining the allocation of periods of physical placement, the court shall consider each case on the basis of the factors in sub. (5)(am)." Sec. 767.41(4)(a)2. For its part, subsection (5)(am) provides that, in making a physical placement determination, "the court shall consider all facts relevant to the best interest of the child," including fourteen enumerated factors. Sec. 767.41(5)(am).[4] The court shall

---

[4] Specifically, WIS. STAT. § 767.41(5)(am) requires courts to consider "all of the following factors, which are not necessarily listed in order of importance":

> 1. The wishes of the child's parent or parents, as shown by any stipulation between the parties, any proposed parenting plan or any legal custody or physical placement proposal submitted to the court at trial.

> 2. The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.

> 3. The cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party.

> 4. Whether each party can support the other party's relationship with the child, including encouraging and facilitating frequent and continuing contact with the child, or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

(continued)

5. The interaction and interrelationship of the child with his or her siblings, and any other person who may significantly affect the child's best interest.

6. The interaction and interrelationship of the child with his or her parent or parents and the amount and quality of time that each parent has spent with the child in the past, any necessary changes to the parents' custodial roles, and any reasonable lifestyle changes that a parent proposes to make to maximize placement with the child.

7. Whether any of the following has or had a significant problem with alcohol or drug abuse:

    a. A party.

    b. A person with whom a parent of the child has a dating relationship, as defined in [WIS. STAT. §] 813.12(1)(ag).

    c. A person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household.

8. The child's adjustment to the home, school, religion, and community.

9. The age of the child and the child's developmental and educational needs at different ages.

10. Whether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional well-being.

11. Whether any of the following has a criminal record or whether there is evidence that any of the following has engaged in abuse, as defined in [WIS. STAT. §] 813.122(1)(a), of the child or any other child or neglected the child or any other child:

    a. A party.

    b. A person with whom a parent of the child has a dating relationship, as defined in [§] 813.12(1)(ag).

(continued)

thereafter set a placement schedule that "allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that maximizes the amount of time the child may spend with each parent, taking into account geographic separation and accommodations for different households." Sec. 767.41(4)(a)2. This latter requirement does not create a presumption of equal placement between the parties; rather, the court must take into account all of the relevant factors as set forth under § 767.41 in making its placement decision. *Landwehr v. Landwehr*, 2006 WI 64, ¶¶19-23, 291 Wis. 2d 49, 715 N.W.2d 180.

¶30    Here, rather than consider the relevant statutory best interest of the child factors as set forth in WIS. STAT. § 767.41(4) in making its placement decision, the circuit court erroneously exercised its discretion by improperly applying a presumption of equal placement and failing to consider several relevant statutory factors.

¶31    First, in ordering equal physical placement, the circuit court improperly framed the central inquiry as "whether or not placement needs to be restrained in any way" and adopted a shared placement schedule on the ground that the court had not been given any reason not to adopt such a placement

---

c. A person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household.

12. Whether there is evidence of interspousal battery, as described under [WIS. STAT. §§] 940.19 or 940.20(1m), or domestic abuse, as defined in [WIS. STAT. §] 813.12(1)(am).

13. The reports of appropriate professionals if admitted into evidence.

14. Any other factor that the court determines to be relevant.

14

schedule. This is not the proper legal standard to use in determining physical placement pursuant to WIS. STAT. § 767.41(4). A circuit court does not start with a presumption of equal placement and then determine whether there are factors necessitating deviations from such a presumption. Rather, the court is directed to allocate periods of physical placement by considering all of the facts relevant to the child's best interest, including those factors that are specifically enumerated by statute, and setting a placement schedule that allows the child to have regularly occurring, meaningful periods of placement and that maximizes the time the child may spend with each parent. Sec. 767.41(4)(a). We conclude that the court applied an improper legal standard by presuming an equal physical placement schedule unless the parties demonstrated that placement should be "restrained" in some way. *See **Keller v. Keller***, 2002 WI App 161, ¶¶12-13, 256 Wis. 2d 401, 647 N.W.2d 426 (the circuit court applied an improper standard of law when presuming that equal placement was required).

¶32    Teahanna also argues that the circuit court erroneously exercised its discretion in failing to consider several relevant statutory best interest of the child factors that were presented to the circuit court at trial, including: the effect on the child's well-being of Charles's mental health history of depression, suicidal ideation, and failure to seek treatment, *see* WIS. STAT. § 767.41(5)(am)10.; Charles's interaction and interrelationship with the child, considering that Charles testified that he had, at most, seven visits with the child during the 20-month pendency of the divorce action, *see* § 767.41(5)(am)6.; the parties' ability to cooperate and communicate, given the evidence of domestic abuse and Charles's

history of noncooperation in the divorce action, *see* § 767.41(5)(am)3.[5];and evidence of domestic abuse, *see* § 767.41(5)(am)12. and (bm).[6] We agree that the court's failure to consider these relevant best interest of the child factors set forth in § 767.41(5)(am) was an erroneous exercise of discretion. *See Goberville*, 280 Wis. 2d 405, ¶10 (court's failure to consider "relevant factors" was erroneous). On remand, we direct the circuit court to consider these best interest of the child factors, and any other relevant best interest of the child factors, in making the physical placement decision.

¶33 For his part, Charles does not meaningfully respond to Teahanna's arguments regarding physical placement on appeal. His argument in support of the circuit court's placement decision is limited to the following sentence: "In the oral ruling, while not itemizing out factors, the plain words of the decision reflect the pertinent factors." Charles does not further develop his argument, nor does he cite to any portions of the record or legal authority to support it. We decline to address Charles's conclusory and undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address

---

[5] Although not part of its decision regarding physical placement, the portion of the circuit court's decision regarding child support noted that Teahanna's injunction prevented Charles from "mak[ing] contact on behalf of [the child]" or otherwise communicating with Teahanna. The existence of the injunction, however, had no bearing on Charles's communication or cooperation with Teahanna before that order took effect or on Charles's ability to cooperate in the divorce action at any time.

[6] WISCONSIN STAT. § 767.41(5)(bm) provides:

> If the court finds … that a parent has engaged in a pattern or serious incident of … domestic abuse, as defined in [WIS. STAT. §] 813.12(1)(am), the safety and well-being of the child and the safety of the parent who was the victim of the battery or abuse shall be the paramount concerns in determining legal custody and periods of physical placement.

arguments that are undeveloped, including the lack of references to supporting legal authority).

¶34    Charles also argues that we should not disturb the circuit court's decision regarding physical placement because it would not be in the child's best interest to alter the placement schedule that has been in effect since the court's order.  This argument fails because we are an error-correcting court and "may not exercise the [circuit] court's discretion."  *State v. Hydrite Chem. Co.*, 220 Wis. 2d 51, 65, 582 N.W.2d 411 (Ct. App. 1998).  Whether it is in the child's best interest to continue with the current shared placement schedule is an issue that is properly directed to the circuit court on remand.

¶35    In sum, we conclude that the circuit court applied an incorrect standard of law in ordering shared physical placement and in not considering relevant factors involving the best interest of the child in its physical placement decision.  Accordingly, we reverse and remand for the court to properly exercise its discretion consistent with this opinion.

### IV.  Past Child Support

¶36    Teahanna argues that the circuit court erroneously exercised its discretion in denying her request for past child support during the pendency of the divorce action.  We agree.  For the following reasons, we conclude that the court's decision on past child support was premised on legal and factual errors.

¶37    When a court enters a judgment of divorce, it must "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child."  WIS. STAT. § 767.511(1)(a).  A parent may be liable for past child support, but such support is "limited to the period after the birth of the child."

17

Sec. 767.511(5). "In determining child support payments, the court may consider all relevant financial information or other information relevant to the parent's earning capacity." Sec. 767.511(1g).

¶38 Any child support amount ordered must be expressed as a fixed sum unless otherwise stipulated by the parties. WIS. STAT. § 767.511(1)(a). The fixed child support amount ordered must generally represent a percentage of a parent's income, according to standards established by the Department of Children and Families. Sec. 767.511(1j).[7] Upon request of a party, a court may modify the amount of child support determined under the above method if, after considering various factors, including the financial resources of both parents and the needs of the child, it finds by the greater weight of the credible evidence that the use of the percentage standard is unfair to the child or to any of the parties. Sec. 767.511(1m).[8]

---

[7] When, as here, a party seeks child support for one child during a period when the parents did not share placement, the Department of Children and Families has established a standard of 17% of the parent's monthly income. WIS. ADMIN. CODE § DCF 150.035(2)(a) (2024). Charles does not dispute that this percentage standard applies here.

[8] Specifically, the court must consider the following factors:

(a) The financial resources of the child.

(b) The financial resources of both parents.

(bj) Maintenance received by either party.

(bp) The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 U.S.C. § 9902(2).

(bz) The needs of any person, other than the child, whom either party is legally obligated to support.

(continued)

18

¶39     "The primary goals of child support statutes are to 'promote the best interests of the child' and 'avoid financial hardship for children of divorced parents.'" ***Rottscheit v. Dumler***, 2003 WI 62, ¶31, 262 Wis. 2d 292, 664 N.W.2d 525 (citation omitted). "[C]hild support is not a form of punishment … but is instead a duty resulting from procreating children." ***Id.***, ¶33 (citation omitted); *see also **Hernandez v. Allen***, 2005 WI App 247, ¶22, 288 Wis. 2d 111, 707 N.W.2d

---

(c) If the parties were married, the standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

(e) The cost of child care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej) The award of substantial periods of physical placement to both parents.

(em) Extraordinary travel expenses incurred in exercising the right to periods of physical placement under [WIS. STAT. §] 767.41.

(f) The physical, mental, and emotional health needs of the child, including any costs for health insurance as provided for under [WIS. STAT. §] 767.513.

(g) The child's educational needs.

(h) The tax consequences to each party.

(hm) The best interests of the child.

(hs) The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i) Any other factors which the court in each case determines are relevant.

557 ("[W]hile child support is ordered to benefit the child, it actually is an obligation owed to the recipient parent.").

¶40    Here, Teahanna requested that the circuit court award her child support for the period between her filing of the divorce action in September 2021 and the entry of the judgment of divorce in June 2023.  During this period, the uncontroverted facts establish all of the following:  Teahanna and the child lived separately from Charles; Teahanna provided the sole economic support for the child and did not receive any economic support from Charles; and the child was primarily in Teahanna's care, aside from a handful of times when Charles visited with the child at Teahanna's sister's house.

¶41    The circuit court denied Teahanna's request for past child support during the pendency of the divorce action because of Teahanna's domestic abuse injunction.  In its oral ruling and subsequent written decision, the court found that the injunction was a "self-help situation that [Teahanna] had set up that allowed her to have sole custody [and] sole placement and expect [Charles] to then provide support."  The court reasoned that Charles had equal rights as to custody and physical placement during the pendency of the divorce action, but "[Teahanna] took the child and[,] through the use of the restraining order …, retained possession of the child without any reasonable legal way for [Charles] to exercise his otherwise lawful equal right to placement."  We reach the following conclusions on this issue.

¶42    First, the circuit court improperly denied Teahanna's request for child support by applying an incorrect legal standard.  The court's denial of Teahanna's past child support is premised on its conclusion that Teahanna obtained a domestic abuse injunction against Charles for the purpose of interfering

20

with Charles's legal custody and physical placement rights while expecting him to pay child support. Even if the record supported this conclusion—and we do not discern a basis for it in the record—Teahanna's alleged interference with Charles's ability to exercise legal custody and physical placement regarding their child is not a valid reason for deviating from the child support standards under WIS. STAT. § 767.511(1m) and does not have any bearing on the party's earning capacity under § 767.511(1g). Indeed, the child support statute explicitly provides that one parent's inability to exercise physical placement of a child as a result of the other parent's conduct does not allow the first parent to escape child support obligations. Sec. 767.511(3) ("Violation of physical placement rights by the custodial parent does not constitute reason for failure to meet child support obligations."). And, as this court has explained in a similar context, a parent's "inability to visit and provide for [the parent's child], standing alone, may [not] justify a deviation from the percentage standards." *Brad Michael L. v. Lee D.*, 210 Wis. 2d 437, 452, 564 N.W.2d 354 (Ct. App. 1997).[9] Here, the circuit court's "refusal to order past support on an impermissible factor" is an erroneous exercise of discretion. *See id.* at 453.

---

[9] Our decision in *Brad Michael L. v. Lee D.*, 210 Wis. 2d 437, 564 N.W.2d 354 (Ct. App. 1997), involved the closely-related issue of a circuit court's deviation from the percentage standard for child support in a paternity action. Although the current requirements for deviating from the percentage standard are the same for paternity actions and divorce actions, *see* WIS. STAT. § 767.511(1), the version of the statutes applied in *Brad Michael L.* set forth slightly different sets of factors for the court to consider when deviating from the percentage standard in paternity actions and divorce actions. *See* WIS. STAT. §§ 767.51(5), 767.25(1m) (1991-92). This difference does not affect the applicability of *Brad Michael L.* to the present case because the child support statute as it existed at the time of that case, like the current version of § 767.511, also did not allow a court to consider a violation of a parent's physical placement rights in setting child support.

¶43     The circuit court's denial of Teahanna's request for past child support because she obtained a domestic abuse injunction against Charles is also an unreasonable exercise of discretion.  As stated, Charles admitted at trial to engaging in much of the conduct described in Teahanna's domestic abuse injunction petition which was the basis for the granting of the domestic abuse injunction.  The statutes and case law do not force a parent to have to choose between obtaining a domestic abuse injunction and receiving child support.  On the facts here, the circuit court did not have a basis to conclude that any provision of the domestic abuse injunction supported Charles in his argument regarding child support.  Here, the denial of past child support by the circuit court, at least as explained by the court and in the context of relevant portions of the record, appears to contravene the statutory purpose of child support, which is to provide financial support for a child.  Further, it appears to contravene the explicit requirements reflected throughout WIS. STAT. ch. 767 that circuit courts must consider the occurrence of domestic abuse in family actions in making legal custody and physical placement determinations to protect parents and children.

¶44     Charles argues that the circuit court's decision was based primarily on the parties' failure to obtain a temporary order on legal custody and physical placement, not the effect of the injunction.  This argument fails because Charles provides no legal authority to support his assertion that a party's failure to obtain a temporary order is a proper consideration when determining child support.  *See Pettit*, 171 Wis. 2d at 646-47 (we may decline to address arguments that are unsupported by references to legal authority).  This argument also fails because it is not responsive to Teahanna's argument that the court considered an improper factor and deviated from the child support standards as set forth in WIS. STAT. § 767.511(1j) and (1m) when it refused to provide for past child support.  "An

argument to which no response is made may be deemed conceded for purposes of appeal." *Hoffman*, 232 Wis. 2d 53, ¶9.

¶45 Because the circuit court's child support decision rested on both legal and factual errors, we reverse and remand for the court to properly exercise its discretion consistent with this opinion.

## IV. Divisibility of the House

¶46 Teahanna argues that the circuit court erroneously exercised its discretion in determining that the house the parties shared during their marriage is Charles's individual property and therefore is not divisible. We agree. For the following reasons, we conclude that the court did not apply the correct standard of law.

¶47 As noted above, a "circuit court's decision on how to divide *divisible* property [in a divorce action] is discretionary." *Derr v. Derr*, 2005 WI App 63, ¶9, 280 Wis. 2d 681, 696 N.W.2d 170. However, the determination of whether property is divisible in the first place is not a discretionary determination and instead involves factfinding and issues of law. *Id.*, ¶10.

¶48 We start our legal analysis by recognizing the "general rule" that assets and debts acquired by either party before or during the marriage are divisible upon divorce. *Id.* We also recognize the statutory exception that excludes property from division if it was "acquired by either party prior to or during the course of the marriage in any of the following ways": (1) as a gift from a person other than the other party; (2) by reason of the death of another; or (3) with funds acquired in one of these two ways. WIS. STAT. § 767.61(2)(a).

23

¶49      The party asserting the non-divisibility of property—here, Charles—has the burden of showing by a preponderance of the evidence that the property is non-divisible. **Brandt v. Brandt**, 145 Wis. 2d 394, 407-09, 427 N.W.2d 126 (Ct. App. 1988). To meet this burden, Charles must establish: (1) the original gifted status of the property under WIS. STAT. § 767.61(2)(a); and (2) that the "character" and the "identity" of the gifted property have been preserved. **Wright**, 307 Wis. 2d 156, ¶12.

¶50      The "character" inquiry, also referred to as the "donative intent," inquiry, concerns whether the gifted asset retains its character as separate property or has become part of the marital estate subject to division. **Trattles v. Trattles**, 126 Wis. 2d 219, 227, 376 N.W.2d 379 (Ct. App. 1985). This inquiry involves considering "whether the owning spouse intended to donate non-divisible property to the marriage." **Derr**, 280 Wis. 2d 681, ¶23. "When non-divisible funds are expended to acquire property, goods, or services that are usually used for the mutual benefit of the parties, donative intent is presumed," unless rebutted by countervailing evidence. **Id.**, ¶¶37, 39. The "identity" inquiry, also referred to as the "tracing" inquiry, **id.**, ¶8, "addresses whether the gifted … asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned." **Id.**, ¶15 (citation omitted).

¶51      If the party asserting the non-divisibility of a gifted asset fails to satisfy either the "character" or the "identity" burden, no further inquiry is needed and the property is divisible. **Wright**, 307 Wis. 2d 156, ¶12. However, if the party asserting the non-divisibility of the gifted asset satisfies both the character and the identity inquiries, the opposing party—here, Teahanna—has the burden to show by sufficient countervailing evidence that the property is not gifted or inherited or is otherwise divisible because its character or its identity has not been preserved.

24

*Brandt*, 145 Wis. 2d at 409. Whether a party has met the party's burden as to a gifted asset's character and identity is a legal determination, reviewed without deference to the circuit court. *Id.*

¶52 Here, the parties dispute whether the house that they shared during the marriage is divisible property. We begin by setting forth the undisputed facts. Charles purchased the house for $66,500 in his name alone one year before the parties' marriage in October 2014. He made a down payment on the house with a $2,600 gift from his grandmother and obtained a mortgage in his name alone for the remaining amount owed on the house. The mortgage payments were automatically deducted from Charles's individual bank account, usually in the amounts of $600 to $700 a month. Charles paid off the remaining balance of the mortgage in 2020 using money gifted to him from his grandmother. The amount of this gift used to pay off the mortgage is not indicated in the record.

¶53 We now turn to the disputed facts on this issue arising from the parties' trial testimony. Teahanna testified to the following. During the marriage, Teahanna worked full-time and was the primary wage earner for the family from approximately 2019 to 2021 when Charles was unemployed or self-employed selling comic books online. Teahanna regularly contributed to household expenses, including the mortgage, and gave Charles cash from her wages that he often deposited into his bank account to pay these expenses. To support her testimony, Teahanna produced various bank account statements from February 2017 to January 2018 showing periodic cash withdrawals from her bank account in amounts ranging from approximately $300 to $600. Teahanna also relied on bank account statements Charles had produced at trial from his bank account from 2016 to 2019 showing monthly deposits of cash amounts between

$500 and $700, with one of these cash deposits occurring on the same day and in nearly the same amount as Teahanna's cash withdrawal from her account.

¶54    At trial, Charles testified to the following. Although Teahanna regularly gave him cash for monthly household expenses, some of which he deposited into his bank account, he never used that money to pay the house mortgage. He paid the mortgage solely from periodic gifts given to him by his grandmother, which were the source of most of the deposits shown on his bank account statements. We infer from his testimony that, when Charles was employed, he also deposited his wages into his bank account. There was no evidence presented that Charles segregated monies deposited into his bank account, based upon the source of the monies, for the payment of specific household expenses.

¶55    In its oral ruling, the circuit court made the following findings and reached the following conclusions. Charles's testimony was "persuasive and the most credible." The house remained Charles's individual property throughout the marriage because he bought the house before the marriage, kept the house in his name alone, and paid the mortgage exclusively using money that was gifted to him from his grandmother. The court acknowledged Teahanna's periodic transfers of cash to Charles, but found that these transfers were for the purpose of paying marital expenses other than the mortgage. Teahanna's counsel asked the court to clarify if it was finding that Charles had shown that the house retained both its character and its identity throughout the marriage, but the court explicitly declined to reach those issues.

¶56    On appeal, Teahanna argues that the circuit court applied an incorrect standard of law when it determined that the house is not divisible

26

because the court did not address Charles's burden to prove both that the character and the identity of the house had been preserved. We agree. Although the court considered the "original gifted … status of the property" when it found that Charles purchased the house with funds gifted by his grandmother, the court failed to consider whether Charles met his burden of showing that both the character and the identity of the gifted property had been preserved. *See **Wright***, 307 Wis. 2d 156, ¶12. Teahanna described these inquiries in her brief to the court. Teahanna mentioned these inquiries again when she asked the court to clarify if it had conducted these inquires in its oral ruling, but the court explicitly declined to do so. Because the divisibility of gifted property depends on whether both the character and the identity of the property have been preserved, we conclude that the court applied an incorrect standard of law when it found that the house is non-divisible property without conducting these inquiries.

¶57 Charles provides only a conclusory assertion in support of the circuit court's decision: that the court "correctly determined that Charles met his burden" and "did apply the proper[] legal standard." Charles does not provide any legal authority to support this assertion or attempt to explain why the court's decision applied the correct legal standard. His assertion is conclusory and unsupported, and we do not consider it further. *See **Pettit***, 171 Wis. 2d at 646-47.

¶58 In sum, the circuit court applied an incorrect standard of law because it failed to conduct the character and the identity inquiries. Accordingly, we reverse the court's order with respect to the non-divisibility of the house and remand for the court to apply the correct standard of law consistent with this opinion. If the court determines on remand that the house is a divisible asset, it is within the court's discretion to determine its division between the parties.

**CONCLUSION**

¶59 For the foregoing reasons, we reverse the circuit court's decision with respect to legal custody of the child, physical placement of the child, past child support, and divisibility of the house. We remand this matter to the court for further proceedings consistent with this opinion.[10]

*By the Court.*—Judgment and order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] Teahanna requests in her appellate briefing that this Court explicitly find that she is entitled to request substitution on remand. Pursuant to WIS. STAT. § 801.58(7), when an appellate court reverses a judgment or order as to any of the parties "in a manner such that further proceedings in the trial court are necessary," a party may file a substitution request within twenty days after the filing of the remittitur in the circuit court. Because this is an issue for the circuit court, we take no position on it.